Madalyn Murray O'HAIR and Society of
Separationists, Inc.,
Plaintiffs-Appellants,

v.

Mark WHITE, et al.,
Defendants-Appellees.

No. 79–1397.

United States Court of Appeals,
Fifth Circuit.*

May 12, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Madalyn Murray O'Hair, pro se.

Jon Murray, for plaintiffs-appellants.

Christopher Rand, Hot Springs, Ark., for Soc. of Separationists.

James McMurtry, County Atty., B. Neal Stokey, Asst. County Atty., Russell J. Bailey, Austin, Tex., for Jones, Renfro, Samuelson, Honts, Richards & Moya.

Susan O'Laughlin Bradshaw, Asst. Atty. Gen., Austin, Tex., for Mark White, et al.

Before GODBOLD, Chief Judge, BROWN, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN,

VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK, WILLIAMS, and GARWOOD **, Circuit Judges.***

VANCE, Circuit Judge:

The appellants in this case, Madalyn Murray O'Hair and the Society of Separationists, Inc. (Society), brought suit to challenge a provision of the constitution of the State of Texas. The district court dismissed the complaint and a divided panel of this circuit affirmed. We now reverse the decision of the district court and remand for further proceedings.

## I.

Madalyn Murray O'Hair is an atheist. She and the Society of Separationists are vocal and active proponents of complete separation of church and state. In October 1978 O'Hair and the Society brought suit in the United States District Court for the Western District of Texas seeking declaratory, injunctive, and compensatory relief for a complex of alleged constitutional violations.[1] The gravamen of the complaint was that a provision that had been in the constitution of the State of Texas since 1875[2] violated the civil rights of O'Hair and of the Society's membership both by its existence and by its application. The challenged constitutional section provides:

> No religious test shall ever be required as a qualification to any office, or public trust, in this State; nor shall anyone be excluded from holding office on account of his religious sentiments, *provided he acknowledge the existence of a Supreme Being.*

Tex.Const., art. 1, § 4 (emphasis added). Despite the rather confusing nature of the complaint, we have been able to identify several specific claims for which appellants seek relief.

Appellants seek a declaration that article 1, section 4 of the Texas constitution (section 4) establishes a state religion in derogation of the federal Constitution's first amendment establishment clause,[3] fourteenth amendment equal protection clause,[4]

---

** Judge Garwood has elected not to participate in this decision.

*** Judge Ainsworth participated in argument and consultation but because of his death on December 22, 1981 did not participate in this decision.

1. Appellants properly invoked the jurisdiction of the district court pursuant to 28 U.S.C. § 1343(a)(3) and (4) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. This court's appellate jurisdiction rests upon 28 U.S.C. § 1291.

   The Society filed a similar suit in the United States District Court for the Western District of North Carolina in 1979. In that case a declaratory judgment was entered on the basis of a consent decree in which the state agreed not to enforce a similar constitutional provision. *See Society of Separationists, Inc. v. Hunt,* No. CC 78–0351 (W.D.N.C. April 4, 1979).

2. The State of Texas has promulgated six constitutions since it declared its independence from the Republic of Mexico in 1836. Four were written during the period of political chaos surrounding the Civil War and Reconstruction. The current constitution was drafted in 1875 and adopted the following year, and has been amended many times since then. Article 1, section 4, the constitutional provision at issue in this lawsuit, had no precursor in any of the former constitutions.

3. The relevant portion of the first amendment provides:

   > Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .

   U.S.Const., amend. 1. The establishment clause has been incorporated into the fourteenth amendment and held applicable to the states. *E.g., Everson v. Board of Educ.,* 330 U.S. 1, 15–16, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947). *See generally Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937) (basis for incorporation is whether particular constitutional provision is "implicit in the concept of ordered liberty").

4. The relevant portion of the fourteenth amendment provides:

   > All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or proper-

and article IV guarantee of a republican form of government.[5] They seek to enjoin numerous state activities that comply with the requirements of section 4 on the ground that those activities operate to discriminate against atheists. They seek an injunction against the payment of any salaries to state officials, judges, or jurors because those parties were allegedly selected from a pool from which atheists were illegally excluded. They also seek to prevent the perpetuation of the alleged exclusion of atheists from public office or jury service by enjoining any election or jury selection in Texas until section 4 is declared unconstitutional.[6]

As the basis for their standing to sue on these claims, appellants allege they have been harmed by both the existence and the operation of section 4. Primarily, appellants assert that the section effectively establishes religion in Texas in violation of

their rights under the first amendment. They allege direct injury as members of a religious minority who suffer officially sanctioned discrimination by being singled out and held up for public ridicule. They also claim that section 4 has caused O'Hair and several other members of the Society to be excluded from jury service and has prevented atheists from running for public office and thus from receiving a state salary.

In addition to seeking injunctions based on these claims,[7] appellants seek to halt five cases that have been initiated against them in the state court system. The first is a criminal proceeding charging O'Hair with disrupting the invocation of the Austin City Council meeting on November 3, 1977.[8] The other four are civil actions, two of which were brought solely against O'Hair and two of which were brought against

---

ty, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S.Const., amend. 14, § 1.

5. Article IV, section 4 of the United States Constitution provides:
    The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.
Appellants have alleged that section 4 of the Texas constitution establishes a state religion, which is tantamount to the creation of a theocratic state in derogation of this guarantee. Although as a general matter courts should decide standing issues first, the standing doctrine is but a component of the concept of justiciability. See L. Tribe, American Constitutional Law §§ 3–7, 3–16, 3–17 (1978). Consequently, if an issue is clearly nonjusticiable for reasons other than lack of standing a court may make its decision without reaching the standing question.
    This claim presents such a situation, for suits arising under the guarantee clause clearly present nonjusticiable political questions. E.g. Luther v. Borden, 48 U.S. (7 How.) 1, 12 L.Ed. 581 (1849); see also Pacific States Tel. & Tel. Co. v. Oregon, 223 U.S. 118, 142, 32 S.Ct. 224, 228, 56 L.Ed. 377 (1912). See generally Note, A Niche for the Guarantee Clause, 94 Harv.L.Rev. 681 (1981). We will noᵗ discuss this claim further.

6. We assume that the defendants are the proper parties against whom to raise the allegations

in this lawsuit because the State has not challenged the complaint on those grounds.

7. On November 18, 1974 O'Hair was summoned for jury service, but refused the call because she would not take the oath that she assumed would be required of her. On September 5, 1978 she was again called for jury service, but was excused by the judge. O'Hair alleges that on each of these occasions she was prevented from serving as a juror by the enforcement of section 4. In this opinion we will not decide whether the circumstances of the first call led to any cognizable injury, but will focus on the 1978 call. See infra section III–C.
    The standing of the Society is not affected by the fact that there is no evidence in the record or any specific factual allegation in the complaint to support the claim that atheists other than O'Hair were excluded from jury service. See infra section IV.

8. Texas v. O'Hair, No. 168,020 (Tex.Dist.Ct.). O'Hair tried to remove the state criminal proceeding to federal court, but the district court remanded the case to state court. The appeal from that decision was originally consolidated with this case, Texas v. O'Hair, No. 79–1823 (5th Cir. June 4, 1979), but that order was later vacated and the two cases were severed. Texas v. O'Hair, No. 79–1823 (5th Cir. Oct. 31, 1979). Subsequently a panel of this court summarily affirmed the remand order of the district court. Texas v. O'Hair, 607 F.2d 1005 (5th Cir. 1979) (denial of motion to supplement record and rule 21 affirmance), cert. denied, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980).

both appellants.[9] The essence of appellants' grievance is that these proceedings violate their due process and equal protection rights because section 4 operates to exclude atheists from the judiciary and from jury service. Appellants contend that claims that relate intimately to their activism in matters concerning religion are consequently being tried by people who are biased against atheists. Standing is predicated upon the subjection of appellants to allegedly unfair trial, the threat of pecuniary loss if any of the civil cases is resolved against them, and the potential loss of O'Hair's liberty if she is convicted in the criminal case.

The district court dismissed this action, concluding that it lacked subject matter jurisdiction over the state defendants and defendant judges, and that it should abstain with respect to the other defendants.[10] A divided panel of this court affirmed, *O'Hair v. Hill*, 641 F.2d 307 (5th Cir. 1981), holding that: appellants had no standing to challenge section 4 under the establishment clause or to challenge state salary payments or state elections; the court should abstain from dealing with the equal protection, due process, and jury seating claims; the guarantee clause claim raised a nonjusticiable political question; and there was no proof in the record of monetary damages attributable to a violation of appellants' civil rights.

We have considered this case en banc to decide three issues. First, does O'Hair have standing to challenge the constitutionality of section 4, either on its face or as applied? Second, does the Society have standing to challenge section 4? Third, even if appellants have standing, should the federal court invoke the abstention doctrine and refrain from reaching the merits of the case?

## II.

The doctrine of standing reflects concern about the power of the federal court to entertain lawsuits, as well as the proper place of the federal court in our democratic society. Thus the standing doctrine has its origins in "both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975) (citing *Barrows v. Jackson*, 346 U.S. 249, 255–56, 73 S.Ct. 1031, 1034–35, 97 L.Ed. 1586 (1953)); *accord, Korioth v. Briscoe*, 523 F.2d 1271, 1274 (5th Cir. 1975). Despite the relatively recent spate of Supreme Court standing decisions the doctrine remains opaque and does not admit of easy application.[11]

Perhaps the most fundamental aspect of the standing doctrine is that it focuses on the particular plaintiff seeking to bring his claim before the federal court, not on the issues or merits of the case.[12]

9. The record discloses very little information about the four civil cases aside from appellants' assertion that they are harassment suits designed to interfere with the public activities of O'Hair and the Society. *Friday v. O'Hair*, No. 279,345 (Tex.Dist.Ct.), has been to trial. It appears that *Frazer v. O'Hair*, No. 269,196 (Tex.Dist.Ct.), the other case naming only O'Hair as defendant, is dormant.

The other two cases, which name both O'Hair and the Society as defendants, have been relatively active. The plaintiff in *Strobel v. O'Hair*, No. 271,161 (Tex.Dist.Ct.), who alleged that appellants slandered her, was awarded damages of $45,000. That award was overturned on appeal because of the improper handling of a recusal motion by the trial judge. *Society of Separationists, Inc. v. Strobel*, 593 S.W.2d 855 (Tex.Civ.App.1980). No further proceedings appear to have taken place. The

basis of the final suit, *Murchison v. O'Hair*, No. 273,748 (Tex.Dist.Ct.), is not clear, but it appears that a default judgment was entered against both appellants, and then set aside with respect to the Society.

10. *See O'Hair v. Hill*, No. A–78–CA–220 (W.D. Tex. Dec. 27, 1978).

11. *See generally* Scott, *Standing in the Supreme Court—A Functional Analysis*, 86 Harv. L.Rev. 645, 660–69 (1973); Tushnet, *The New Law of Standing: A Plea for Abandonment*, 62 Cornell L.Rev. 663, 663–65 (1977).

12. *But see* Tushnet, *supra* note 11, at 663–64, 681–88, 699–700 (decisions concerning standing serve as a surrogate for disposition on the merits).

The gist of the standing question is whether appellants have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *accord, Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968); *Korioth v. Briscoe*, 523 F.2d at 1274–75. While the court must determine whether appellants are the proper parties to challenge the constitutionality of section 4, rather than whether the issues they raise are justiciable, *Flast v. Cohen*, 392 U.S. at 99–100, 88 S.Ct. at 1952, the nature and source of the claims are relevant. *See Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. at 2205.

■ The constitutional dimension of the standing doctrine derives from the "case or controversy" requirement of article III of the federal Constitution and thus presents the federal court with a threshold question concerning its power to entertain the lawsuit before it. The remedial power of the court may be exercised only on behalf of a plaintiff who has suffered a threatened or actual injury from an allegedly illegal action. *Warth v. Seldin*, 422 U.S. at 498–99, 95 S.Ct. at 2204–05; *see Regents of the University of California v. Bakke*, 438 U.S. 265, 280 n.14, 98 S.Ct. 2733, 2742 n.14, 57 L.Ed.2d 750 (1978). That injury may be to rights existing solely by virtue of a statute or constitution. "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. at 2205.

■ These abstract constitutional principles, which reflect a traditional mistrust of roving judicial commissions [13] and advisory opinions,[14] have been distilled into a two-part analytical framework by the Supreme Court. Because the federal judicial power exists only to remedy injury to a complaining party, the standing doctrine in its constitutional sense requires a "distinct and palpable injury" to a plaintiff. *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206; *accord, Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, —— U.S. ——, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Pevsner v. Eastern Air Lines, Inc.*, 493 F.2d 916, 917 (5th Cir. 1974). The doctrine also mandates that federal court jurisdiction be invoked only when that distinct and palpable injury can fairly be traced to the challenged conduct, so that the exercise of federal power in that case will redress the alleged injuries. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976); *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 898 (5th Cir.), *cert. denied*, 439

---

**13.** *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 540, 101 S.Ct. 2882, 2912, 69 L.Ed.2d 800 (1981) (Stevens, J., dissenting); *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973); *Younger v. Harris*, 401 U.S. 37, 52, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971); *Cooper v. Department of the Navy of the United States*, 594 F.2d 484, 488 n.2 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979).

**14.** *See, e.g., Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). This salutary rule has its genesis in the Supreme Court's refusal to advise President Washington informally on questions relating to American neutrality. *See* Letter from Chief Justice John Jay and the Associate Justices to President George Washington (August 8, 1793), *reprinted in* P. Bator, P. Mishkin, D. Shapiro and H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 65–66 (2d ed. 1973). The Constitutional Convention rejected a proposal which would have allowed the courts to render advisory opinions. *See* I The Records of the Federal Convention of 1787, 21 (M. Farrand ed. 1911).

U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978).[15]

Although the palpable injury forming the basis for standing is most often economic harm resulting from some official conduct, *see, e.g., Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), the Supreme Court has established that a person may have the requisite personal stake in the controversy as a result of injury to aesthetic, conservational, or recreational values. *See Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972); *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153–54, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970); *United States v. Gurney*, 558 F.2d 1202, 1206 (5th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); *Scenic Hudson Preservation Conference v. FPC*, 354 F.2d 608, 616 (2d Cir. 1965), *cert. denied*, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966).[16] While it is clear that abstract injury is not enough to establish standing, *e.g., O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S.Ct. 669, 674, 38 L.Ed.2d 674 (1974); *Pollard v. Cockrell*, 578 F.2d 1002, 1006 (5th Cir. 1978), it is equally clear that actual harm to individual values of an abstract or esoteric nature can provide the basis for standing.

Wary of being "called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights," *Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. at 2205, the Supreme Court has also imposed certain prudential barriers to standing. First, the Court has held that when the asserted injury is a generalized grievance shared in substantially equal measure by all or most citizens, that injury usually will not suffice to provide standing. *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 220, 94 S.Ct. 2925, 2931, 41 L.Ed.2d 706 (1974); *Ex parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937); *Finch v. Mississippi State Medical Association*, 585 F.2d 765, 771 (5th Cir. 1978).[17] Second, a plaintiff generally may not rest his claim to relief on the legal rights of third parties even if he has alleged injury sufficient to satisfy article III. *Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. at 2204; *Rogers v. Brockette*, 588 F.2d 1057, 1060–62 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979); *see Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493, 494, 87 L.Ed. 603 (1943). These prudential concerns are self-imposed restraints, however, not constitutional mandates; they may give way to more important considerations as long as the minimum constitutional requirements are met. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 443–46, 92 S.Ct. 1029, 1033–35, 31 L.Ed.2d 349 (1972).

---

**15.** *See generally* Note, *The Causal Nexus: What Must Be Shown for Standing to Sue in Federal Courts*, 29 U.Fla.L.Rev. 250 (1977).

**16.** In *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972), the Court stated:

Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process.

Although the Court went on to deny standing in that suit because the plaintiff had failed to allege that it was injured by the challenged action, this statement has had tremendous impact on the development of the law of standing. In two other cases the Court reached similar conclusions and held that injury to abstract values such as environmental concerns sufficed to meet the injury in fact requirement. *See Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 73–74, 98 S.Ct. 2620, 2630–31, 57 L.Ed.2d 595 (1978); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 685–87, 93 S.Ct. 2405, 2415–16, 37 L.Ed.2d 254 (1973).

That *Sierra Club* and *SCRAP* were cases concerning section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, has no bearing on our acceptance of injury to abstract values as the basis for standing outside of the context of review of administrative actions. *See United States v. SCRAP*, 412 U.S. at 689 n.14, 93 S.Ct. at 2417 n.14.

**17.** *But see Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972).

With both the constitutional and prudential principles in mind, we turn to the case before us.

### III.

Appellant O'Hair alleges that section 4 injures her in several ways and that she consequently has standing to challenge its constitutionality. First, she alleges that the challenged provision interferes with her fundamental right to vote. Second, she alleges that section 4 prevents her from receiving a fair trial in the pending state civil and criminal proceedings, thus violating her rights under the due process and equal protection clauses. Third, she alleges that she was excluded from jury service because of her refusal to acknowledge the existence of a supreme being. We will inspect each contention separately, accepting as true the material allegations in the complaint and construing the complaint in favor of appellants. *See, e.g., Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206; *Pollard v. Cockrell*, 578 F.2d at 1006.[18]

### A.

■ The thrust of O'Hair's voting rights claim is that because section 4 operates to exclude atheists from holding office in Texas she is precluded from running for public office and from casting her ballot for atheistic candidates. Because a "citizen's right to vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution," *Baker v. Carr*, 369 U.S. at 208, 82 S.Ct. at 705 (three examples listed),[19] there can be no doubt that the complaint alleges the injury in fact necessary to demonstrate O'Hair's "personal stake in the outcome of the controversy." *See id.* at 204, 82 S.Ct. at 703. Certainly the injury to O'Hair's fundamental right to vote is at least as palpable as the injuries to environmental, recreational, or aesthetic values that have in other cases sufficed to provide standing.[20]

The State of Texas argues that even if O'Hair's complaint alleges the requisite injury in fact it failed to demonstrate any

18. Appellants have also alleged that they have standing to challenge the facial constitutionality of section 4 under the establishment clause. At one time this argument appeared tenable. *See Flast v. Cohen*, 392 U.S. 83, 114, 88 S.Ct. 1942, 1959, 20 L.Ed.2d 947 (1968) (Stewart, J., concurring) (establishment clause created "personal constitutional right" to be free from excess entanglement of church and state); *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970) (individual may have spiritual stake in first amendment values sufficient to confer standing); *cf. Lemon v. Kurtzman*, 403 U.S. 602, 623, 91 S.Ct. 2105, 2116, 29 L.Ed.2d 745 (1971) (establishment of religion creates peculiar likelihood that sectarian strife will envelop political sphere); *School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 242, 83 S.Ct. 1560, 1582, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring) (government sponsorship of religious view diminishes attractiveness of nonsponsored views); *Engel v. Vitale*, 370 U.S. 421, 429–31, 82 S.Ct. 1261, 1266–67, 8 L.Ed.2d 601 (1962) (establishment of religion tends to destroy government, degrade religion, and place indirect coercive pressure upon religious minorities to conform to sponsored view); *Illinois v. Board of Educ.*, 333 U.S. 203, 231, 68 S.Ct. 461, 475, 92 L.Ed. 649 (1948) (protection of minority groups is crucial goal of first amendment religion clauses). *Compare* cases cited *supra* note 16.

This argument was recently foreclosed by the Supreme Court. In *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, —— U.S. ——, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), *rev'g Americans United for Separation of Church and State, Inc. v. HEW*, 619 F.2d 252 (3d Cir. 1980), the Court rejected a similar argument raised by an organization that had brought suit to enjoin the transfer of public property to a religious institution. The Court stated that a claim under the establishment clause failed to allege an injury that comported with the case or controversy requirement. *Id.* at ——, 102 S.Ct. at 766. *Valley Forge*, however, does not affect our holding in this case that O'Hair has standing to raise her voting rights claim and her claims of specific instances of religious discrimination.

19. *See Wesberry v. Sanders*, 376 U.S. 1, 17–18, 84 S.Ct. 526, 534–35, 11 L.Ed.2d 481 (1964):

No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right.

20. *See supra* note 16 and accompanying text.

causal connection between the alleged injury and the challenged conduct. It is beyond peradventure, however, that the alleged injury stems directly from the existence of section 4 in the state constitution. O'Hair avers, and we agree, that the diminution of her voting rights can fairly be traced to the alleged exclusion of all atheists from candidacy for office in Texas, which precludes effective representation of that class. *Cf. Anderson v. Martin*, 375 U.S. 399, 403–04, 84 S.Ct. 454, 456–57, 11 L.Ed.2d 430 (1964) (state may not invidiously limit or preclude the opportunities of racial minorities to run for public office).[21] In any event, the causal connection between section 4 and the alleged diminution of O'Hair's voting rights is no less attenuated than the connection the Supreme Court found sufficient to provide standing in *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. at 73–81, 98 S.Ct. at 2630–34 (causal connection found between thermal pollution in two North Carolina lakes and statutorily limited liability of nuclear power plant operators in event of nuclear accident). Thus, O'Hair has met both wings of the constitutional requirement for standing by establishing a direct and palpable injury that is causally related to the challenged conduct.

The next issue we must decide is whether prudential considerations defeat O'Hair's standing to bring this action. As the Supreme Court has stated, the nature and source of the alleged injury has a direct bearing on this inquiry. *Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. at 2205. In this case, no prudential considerations are present to counsel against finding standing to sue. O'Hair's grievance is not a generalized one shared by all citizens, but is a

specific restriction on her ability to vote. Further, she is asserting her own right to vote, not the rights of third parties.

Far more important than these specific considerations, however, is the fact that O'Hair has alleged an impingement upon a fundamental right that is removed from the rough and tumble of the political process and committed to the judiciary:

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

*West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943); *see Wesberry v. Sanders*, 376 U.S. 1, 17–18, 84 S.Ct. 526, 534–35, 11 L.Ed.2d 481 (1964). The concerns that motivated the Supreme Court to deny standing in *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. at 220–22, 94 S.Ct. at 2931–32, are not pertinent to this case. We do not believe that prudential notions of self-restraint in the area of standing are properly invoked in cases involving the dilution of an individual's fundamental voting rights: when a complaint alleges injury stemming from a clogged democratic process, it would be anomalous to require the plaintiff to seek relief from political institutions.[22] O'Hair,

---

21. *See also* L. Tribe, *supra* note 5, § 13–19. States have a legitimate interest in regulating the number of candidates for public office, *Bullock v. Carter*, 405 U.S. 134, 145–46, 92 S.Ct. 849, 856–57, 31 L.Ed.2d 92 (1972), but may not exclude a class of people from eligibility for public office for such reasons as their religious beliefs. *Cf. Gaffney v. Cummings*, 412 U.S. 735, 751–52, 93 S.Ct. 2321, 2330–31, 37 L.Ed.2d 298 (1973) (state legislative redistricting that deprives racial or political group of preexisting voting power may violate fourteenth amend-

ment even if new districts are substantially equal in size).

22. *See also Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (courts should avoid abstract decisions other governmental institutions are more able to make). For a frequently cited starting point for analysis see *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4, 58 S.Ct. 778, 783 n.4, 82 L.Ed. 1234 (1938) ("There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the

"like any person whose right to vote is impaired, has standing to sue." *Gray v. Sanders*, 372 U.S. 368, 375, 83 S.Ct. 801, 805, 9 L.Ed.2d 821 (1963) (citations omitted).

Although O'Hair alleges that section 4 operates to restrict her voting rights, she fails to allege either that she intended to run for office or that she was unable to vote for a particular individual candidate. We do not believe, however, that the inartfulness of the pleadings will defeat O'Hair's standing to sue. In *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), the Supreme Court considered a Georgia statute that allowed counties to limit membership on the school board to freeholders, although nonfreeholders could serve on the grand jury that selected the school board members. The Court explicitly upheld a nonfreeholder's standing to challenge the restriction even though no allegation was made that the nonfreeholder wished to serve on the board or that he was harmed in any other way by the freeholder limitation. *Id.* at 361 n.23, 90 S.Ct. at 540 n.23. The Supreme Court has also summarily affirmed a judgment holding that allegation of state citizenship was sufficient to give a plaintiff standing to challenge the reapportionment of the state legislature. *Matthews v. Handley*, 361 U.S. 127, 80 S.Ct. 256, 4 L.Ed.2d 180 (1959) (mem.), *aff'g* 179 F.Supp. 470 (N.D.Ind.1959) (three judge court). It is significant that *Matthews* was cited as authority for the finding of standing in *Baker v. Carr,* 369 U.S. at 207 n.28, 82 S.Ct. at 704 n.28. We believe that, taken together, these three cases require that we not demand the articulation of subsidiary facts to support a general allegation of a voting rights violation. O'Hair alleged as

much or more in her pleadings as these prior plaintiffs, and any other approach to the pleadings would be overly technical.[23] *See Jenkins v. McKeithen*, 395 U.S. 411, 421–23, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). These cases provide direct authority supporting our finding of standing in this case.

## B.

O'Hair's next claim is that section 4 operates to exclude all atheists from judicial and jury service. This, she contends, subjects her to trial before biased judges and jurors not selected from a representative cross section of the community, in derogation of her due process and equal protection rights. It is settled that both criminal defendants and civil litigants have standing to challenge the composition of juries and the qualifications of judges on due process and equal protection grounds. *See, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 349, 99 S.Ct. 645, 660, 58 L.Ed.2d 552 (1979) (Rehnquist, J., dissenting); *Peters v. Kiff*, 407 U.S. 493, 502–04, 92 S.Ct. 2163, 2168–69, 33 L.Ed.2d 83 (1972) (plurality opinion); *Avery v. Georgia*, 345 U.S. 559, 560–61, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953); *Fay v. New York*, 332 U.S. 261, 287–89, 67 S.Ct. 1613, 1627–28, 91 L.Ed. 2043 (1947); *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946); *Strauder v. West Virginia*, 100 U.S. 303, 308–09, 25 L.Ed. 664 (1880). We need not belabor the point by going through the *Warth* analysis. O'Hair has standing to challenge the impact of section 4 upon her trials.

Constitution, such as those of the first ten Amendments, which are deemed equally specific when held to be embraced within the Fourteenth.") *See generally* J. Ely, Democracy and Distrust 75–77 (1980); L. Tribe, *supra* note 5, §§ 11–1 to 11–4, 16–6 to 16–13. For a discussion of a related issue see *Monroe v. Pape*, 365 U.S. 167, 174, 81 S.Ct. 473, 477, 5 L.Ed.2d 492 (1961) (state remedies that are adequate in theory may be unavailable in reality).

**23.** Another possible reading of *Turner, Matthews*, and *Baker* is that the standing of the

plaintiffs in those cases was based upon an allegation of injury common to all citizens that was necessarily implied by the general allegation of an injury to voting rights. *See supra* text accompanying notes 19–21. O'Hair's general claim of injury to her voting rights was sufficient to put both the court and the defendant on notice of the existence of a concrete dispute. *See* Fed.R.Civ.P. 8(e); Cleary, *Pleading and Presuming: An Essay in Juristic Immaturity*, 12 Stan.L.Rev. 5 (1959).

### C.

O'Hair's final asserted basis for standing is that section 4 caused her to be excluded from jury duty because she refused to swear to her belief in a supreme being. The fourteenth amendment "reaches not only arbitrary class exclusions from jury service based on race or color, but also all other exclusions which 'single out' any class of persons 'for different treatment not based on some reasonable classification.'" *Hoyt v. Florida*, 368 U.S. 57, 59–60, 82 S.Ct. 159, 161, 7 L.Ed.2d 118 (1961) (quoting *Hernandez v. Texas*, 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954)). O'Hair is as aggrieved by being excluded from jury duty because of her lack of religious belief as she is aggrieved by being tried by juries chosen under a system that excludes atheists. She clearly has standing to challenge that system. *Cf. Carter v. Jury Commission*, 396 U.S. 320, 329–30, 90 S.Ct. 518, 523, 24 L.Ed.2d 549 (1970) (people excluded from jury service because of race as aggrieved as those indicted and tried by juries chosen under system of racial exclusion).

### IV.

Until this point we have dealt only with O'Hair's standing to sue in her individual capacity, and have neglected the status of the Society as a litigant. Although, as a general rule, a litigant may not raise the rights of a third party, *Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976); *Tileston v. Ullman*, 318 U.S. at 46, 63 S.Ct. at 494, an exception allows organizations to sue on behalf of members who have been injured by the challenged action. In *NAACP v. Alabama*, the Supreme Court recognized this associational standing and stated:

> If the petitioner's rank-and-file members are constitutionally entitled to [assert a given right] . . . it is manifest that this right is properly assertable by the Association. . . . Petitioner is the appropriate party to assert these rights, be-

cause it and its members are in every practical sense identical. The Association . . . is but the medium through which its individual members seek to make more effective the expression of their own views.

357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958); *accord, Sierra Club v. Morton*, 405 U.S. at 739, 92 S.Ct. at 1368 ("an organization whose members are injured may represent those members in a proceeding for judicial review"); *National Motor Freight Traffic Association v. United States*, 372 U.S. 246, 247, 83 S.Ct. 688, 689, 9 L.Ed.2d 709 (1963) (association proper representative of the interests of its members with standing to bring challenge in district court); *NAACP v. Button*, 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963) (corporation has standing to seek legal redress for infringement of constitutional and other rights on behalf of itself and its members).[24]

Neither *NAACP v. Alabama* nor subsequent cases, however, have created a per se rule granting an organization standing to sue on behalf of any of its members for any injury. Rather, an organization will have standing to sue on behalf of its members when:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Applying these principles to the case at hand, we find that the Society has standing to seek redress for the alleged violation of its members' voting rights. Under this claim every member of the Society suffers individual injury to his or her fundamental right to participate in a democratic process that is free from invidious official religious dis-

---

24. *See* A. deTocqueville, Democracy in America 242 (2d ed. 1863) (no other country has more broadly or more successfully relied upon "the principle of association" than has the United States).

crimination.[25] Because the Society was organized to defend against exactly this kind of harm, it satisfies the requirements of *Hunt* and *NAACP v. Alabama* and has standing to litigate these claims. *See Gresham Park Community Organization v. Howell*, 652 F.2d 1227, 1233 n.8 (5th Cir. 1981). In addition, the Society has standing to challenge on due process and equal protection grounds the two civil suits in which it was named a defendant.

We do not believe, however, that the Society has standing to raise O'Hair's individual due process and equal protection claims or to join in seeking an injunction against further proceedings in the pending state trials against O'Hair. The *Hunt* requirements for associational standing are not met because both the claims asserted and the relief sought require O'Hair's individual participation in the lawsuit. This conclusion is supported by an examination of the rationale for associational standing. The alleged constitutional violations affect O'Hair alone and do not have any legal or practical significance for the rest of the Society's membership. O'Hair is in a position to represent herself and, indeed, is the best representative of her personal interests.

### V.

The state contends that even if appellants have standing to bring this suit the court nonetheless should abstain from reaching the merits of the claims. The district court agreed and the prior panel affirmed that decision, stating that a decision on the merits could only "be based upon a tentative interpretation of state law" that should be made by the state courts. *O'Hair v. Hill*, 641 F.2d at 310.

The abstention doctrine is a rather loose rubric under which several related yet distinct concepts are grouped.[26] The branch of the doctrine relied upon by the panel and the district court was first developed in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), out of a "'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary," and in the hope of "furthering the harmonious relation between state and federal authority." *Id.* at 501, 61 S.Ct. at 645; *see Simmons v. Jones*, 478 F.2d 321, 327 & n.5 (5th Cir. 1973), *modified*, 519 F.2d 52 (1975). This doctrine "authorizes abstention when a federal court faces a constitutional challenge which is intertwined with an ambiguous issue of state law and there is a likelihood that clarification of the state law will moot or substantially alter the federal question." *Duncan v. Poythress*, 657 F.2d 691, 696 (5th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1426, 71 L.Ed.2d 647 (1982); *Gibson v. Jackson*, 578 F.2d 1045, 1048 (5th Cir. 1978), *cert. denied*, 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979).[27]

Despite the many occasions in which questions concerning state law arise, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *E.g., Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967); *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 139 (5th Cir. 1980); *Gibson v. Jackson*, 578 F.2d at 1048–49. While deference to state court adjudication may be proper when resolution of the federal constitutional question is dependent upon an uncertain issue of state

**25.** *See supra* note 21 and accompanying text.

**26.** *See* Note, *Federal Question Abstention: Justice Frankfurter's Doctrine in an Activist Era*, 80 Harv.L.Rev. 604, 621–22 (1967). *See generally* Wright, *The Abstention Doctrine Reconsidered*, 37 Tex.L.Rev. 815 (1959).

**27.** Whether abstention is properly invoked here is not affected by the fact that the state law at

issue is found in the Texas constitution. The doctrine has been invoked to allow state courts to interpret both state constitutional provisions and state statutes. *See, e.g., Harris County Comm'rs. Court v. Moore*, 420 U.S. 77, 85–86, 95 S.Ct. 870, 876, 43 L.Ed.2d 32 (1975); *Reetz v. Bozanich*, 397 U.S. 82, 85, 90 S.Ct. 788, 789, 25 L.Ed.2d 68 (1970).

law,[28] *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965); *McNeese v. Board of Education*, 373 U.S. 668, 673–74, 83 S.Ct. 1433, 1436–37, 10 L.Ed.2d 622 (1963); *Johnson v. American Credit Co.*, 581 F.2d 526, 529–30 (5th Cir. 1978), *Pullman* does not call for abstention when state law is unambiguous, or has been authoritatively construed by the state courts. *Id.* Abstention is not even required in every case in which the state statute in question has not been interpreted by the state courts. *Harman v. Forssenius*, 380 U.S. at 534–35, 85 S.Ct. at 1181–82; *Doud v. Hodge*, 350 U.S. 485, 487, 76 S.Ct. 491, 492, 100 L.Ed. 577 (1956); *BT Investment Managers, Inc. v. Lewis*, 559 F.2d 950, 954 (5th Cir. 1977). Unless the state law in question is fairly susceptible of an interpretation that might avoid or substantially modify the federal constitutional question, federal courts should exercise their properly invoked jurisdiction. *Kusper v. Pontikes*, 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973). Respect for the primary role of state courts as expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law. *Harman v. Forssenius*, 380 U.S. at 535, 85 S.Ct. at 1182; *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 416, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964). When there is no possibility of a constitutional construction of a

state law by the state courts, invoking the abstention doctrine is tantamount to "shirking the solemn responsibility of the federal courts to 'guard, enforce, and protect every right granted or secured by the constitution of the United States.'" *Kusper v. Pontikes*, 414 U.S. at 55, 94 S.Ct. at 306 (quoting *Robb v. Connolly*, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed.2d 542 (1884)); *accord, Zwickler v. Koota*, 389 U.S. at 248, 251, 88 S.Ct. at 395, 397; *Harman v. Forssenius*, 380 U.S. at 534–35, 85 S.Ct. at 1181–82; *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 92 (5th Cir. 1977), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1978).[29]

Turning to the case before us, we conclude that the district court properly abstained from reaching the merits of certain claims raised by appellants. At the same time, however, appellants have raised several claims that do not allow application of the *Pullman* abstention doctrine. Consequently, the district court's application of the doctrine must be partially reversed.

Abstention is not proper as to appellants' voting rights claim. There is nothing ambiguous about section 4. Either that constitutional provision excludes atheists from public office in Texas or it does not; the challenge to section 4 presents a straightforward issue of federal constitutional law

28. The purpose of abstention under this set of circumstances is to avoid "unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965). Abstention may be appropriate in other circumstances if the case presents difficult issues of state law bearing on problems of substantial public concern, the importance of which transcends the result in a given case. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976).

29. *See Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).
Congress could, of course, have routed all federal constitutional questions through the state court systems, saving to [the Supreme] Court the final say when it came to review of

the state court judgments. But our First Congress resolved differently and created the federal court system and in time granted the federal courts various heads of jurisdiction, which today involve most federal constitutional rights.
... We would negate the history of the enlargement of the jurisdiction of the federal district courts, if we held the federal court should stay its hand and not decide the question [of the facial invalidity of an unambiguous state statute] before the state courts decided it.
*Id.* at 437–39, 91 S.Ct. at 510–11 (footnotes omitted), *quoted in Duncan v. Poythress*, 657 F.2d 691, 696 (5th Cir. 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 1426, 71 L.Ed.2d —— (1982). *See generally* Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine*, 122 U.Pa.L.Rev. 1071, 1080–1147 (1974).

and there is no room in which the state courts could maneuver to obviate the necessity of constitutional adjudication. We further note the high costs involved in abstaining when the constitutional challenge includes allegations of facially impermissible discrimination and restrictions on the right to vote. As abstention "involves a discretionary exercise of a court's equity powers," *Baggett v. Bullitt*, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964), it should be applied only in the most extraordinary circumstances when fundamental rights such as voting rights are involved. *See Ross v. Houston Independent School District*, 559 F.2d 937, 942–43 (5th Cir. 1977); *Moreno v. Henckel*, 431 F.2d 1299, 1301 (5th Cir. 1970) (civil rights cases are the least likely candidates for abstention); *Kirkland v. Wallace*, 403 F.2d 413, 415 (5th Cir. 1968); *see also Procunier v. Martinez*, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) (high cost of abstention when challenge concerns facial repugnance to first amendment); *Zwickler v. Koota*, 389 U.S. at 252, 88 S.Ct. at 397 (prohibition of distribution of certain political handbills); *Baggett v. Bullitt*, 377 U.S. at 376–79, 84 S.Ct. at 1325–26 (statute required state employees to take oath incorporating state subversive person act).[30]

Both O'Hair and the Society have claimed that being tried by judges who took office under section 4 violates their right to a fair trial. Abstention is not appropriate as to these claims because there can be no rational construction placed upon the terms "office" or "position of public trust" that could exclude judges from the ambit of section 4. We agree with Judge Clark that "[n]ot even the broadest sweep of ... juror decisions could convince [us] that a Texas court could say that the Texas Constitution's explicit exclusion of atheists from holding 'office' does not cover judges." *O'Hair v. Hill*, 641 F.2d at 313 (concurring in part and dissenting in part).

The panel majority argued that the possibility of an adequate remedy at state law for this claim provided sufficient reason to abstain. We disagree. Although the availability of an alternative state forum is a necessary condition for abstention, *Duncan v. Poythress*, 657 F.2d at 696 n.4, the mere availability of an alternative state remedy is not a sufficient basis to abstain. *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 510, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972); *Moreno v. Henckel*, 431 F.2d at 1300–01. Furthermore, in this case it is far from clear that appellants have an adequate remedy at state law because article 1, section 29 of the Texas constitution purports to make the state bill of rights, in which section 4 is found, invulnerable to change.[31]

The challenge to the Texas jury system is a different matter. The related claims that appellants are being tried by juries that include no atheists and that O'Hair was denied the opportunity to serve as a juror are predicated upon the assumption that section 4 affects jury service because jurors hold office or positions of public trust. The Texas state courts, however, have raised the possibility that section 4 does not apply to jurors. In *Craig v. State*, 480 S.W.2d 680 (Tex.Cr.App.1972), an atheist claimed that his rights under the first and fourteenth amendments were being violated because the inclusion of the phrase "so help me God" in the statutory jury oath led to the systematic exclusion of nonbelievers from jury service. The court held that defendant's claim was without merit because it was constitutionally permissible for jurors to affirm rather than swear. In addition, this court in *Madeley v. Kern*, 488 F.2d 865 (5th Cir. 1974), dismissed a habeas corpus petition claiming religious discrimination in the empaneling of Texas juries because the jurors were required to take an oath con-

---

**30.** *See* Note, *supra* note 26, at 607–11 (special civil rights exception to the abstention doctrine).

**31.** Article 1, section 29 of the Texas constitution provides:

To guard against transgression of the high powers herein delegated, we declare that everything in the "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate ... and all law contrary thereto shall be void.

taining the phrase "so help me God." The court noted that *Craig v. State* had construed section 4 to mean that the juror's oath should be administered in the manner most binding on the individual conscience. *Id.* at 866. A plausible reading of these cases is that jury service is not an office or position of public trust within the meaning of section 4 of the Texas constitution. Because such an interpretation would moot the constitutional question raised by appellants in this case, abstention is proper. Appellants will have to pursue their jury claims in state court.

■ A final problem concerns a separate strand of the general federal abstention doctrine. Appellants have sought to enjoin further proceedings in four civil cases and one criminal prosecution. Injunctive relief with respect to the criminal prosecution of O'Hair is barred explicitly by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In that case the Supreme Court stated that concerns of comity between the federal and state judicial systems required that federal courts abstain from enjoining state criminal proceedings absent a showing of bad faith prosecution, harassment, or extraordinary instances of irreparable harm. *Id.* at 44, 53–54, 91 S.Ct. at 750, 754–755; *accord, Fitzgerald v. Peek*, 636 F.2d 943, 944 (5th Cir.), *cert. denied*, 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981); *Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 300 (5th Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). The prosecution of O'Hair for disorderly conduct arising from the alleged disruption of a city council meeting does not meet this stringent requirement. Consequently, her claim for injunctive relief must be denied and she will have to raise her constitutional claims in the state proceeding. O'Hair's parallel claim for declaratory relief must be dismissed as well because "a declaratory judgment [would] result in precisely the same interference with and disruption of state

proceedings that the long-standing policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72–73, 91 S.Ct. 764, 767–68, 27 L.Ed.2d 688 (1971).

■ Although the *Younger* doctrine has been invoked with respect to certain civil proceedings in which vital state interests were involved, *see, e.g., Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (protection of victims of child abuse); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state contempt process); *Huffman v. Pursue, Inc.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1972) (quasi-criminal proceeding), it should not be applied to the civil suits that are at issue in this case. Certain considerations of comity and federalism apply in civil proceedings as well as in criminal prosecutions, but "the offense to state interests is likely to be less in a civil proceeding." *Younger v. Harris*, 401 U.S. at 55 n.2, 91 S.Ct. at 757 n.2 (Stewart, J., concurring). In those cases in which the Supreme Court has applied the *Younger* doctrine to civil litigation, the state was a party and, more importantly, was seeking to vindicate important state policies.[32] The civil cases against O'Hair and the Society involve wholly private disputes and it does not appear that federal court intervention would affect any important state interest. *See Henry v. First National Bank of Clarksdale*, 595 F.2d at 300–01. Accordingly, we conclude that the district court should not apply the *Younger* doctrine to the four private disputes now pending in the state courts of Texas.[33]

## VI.

We have concluded that the decision of the district court to dismiss this lawsuit must be reversed. At the same time, we emphasize that our decision is a narrow one that does not reach the merits of any claim raised by appellants. We have held that appellants have standing to sue in their

---

**32.** *See* 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4254 (1978).

**33.** We do not imply that plaintiffs are entitled to injunctive relief without demonstrating that these civil suits fall outside the Anti-Injunction Act, 28 U.S.C. § 2283.

individual capacities, and, for some claims, in their representative capacities. We do not intimate any opinion as to whether either appellant has been deprived of any constitutional right or has been injured in any manner.[34] That decision must be made by the district court after further proceedings.

We have also determined that complete abstention is not appropriate in this case. Again, such a determination does not reflect a decision on the merits of any claim. It is for the lower court to determine whether section 4 has operated to deny O'Hair or the Society a fair trial or to deprive O'Hair or the Society's members of their voting rights. Whether there is any right to relief will necessarily turn on that determination. We reiterate that our decisions concerning standing and abstention are based upon the pleadings viewed in the light most favorable to the appellants, and that appellants will only be entitled to relief upon proof of their allegations.[35]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

TJOFLAT, Circuit Judge, with whom FAY and GARZA, Circuit Judges, join, concurring in part and dissenting in part:

In its zeal to provide a forum for the vindication of first amendment values, the majority rides roughshod over established standing requirements, endows O'Hair with claims she does not allege, disregards a tenable construction of Article I, section 4, of the Texas Constitution which would avoid the federal constitutional question, and ignores O'Hair's failure to demonstrate that she has no adequate remedy at law for the claims she advances as a litigant in Texas courts. The following three parts discuss O'Hair's claims as they are identified in Part III of the majority opinion. While I would adhere to the classification of claims set out in the panel opinion, *O'Hair v. Hill*, 641 F.2d 307 (5th Cir. 1981), I adopt the majority's framework here for convenience.

I.

A.

The majority characterizes the first claim as a voting rights claim, saying that O'Hair alleges that she is precluded both from voting for atheistic candidates and from holding elective office in Texas.[1] In fact, the word "vote" does not appear in the complaint, and O'Hair makes no allegation even remotely resembling a claim that she is deprived of the right to vote for atheistic candidates. Although O'Hair's cryptic complaint does demand generous interpretation, in this instance the majority has manufactured a claim she never pleaded. I therefore limit my discussion of the "voting rights claim" to the allegation O'Hair did

---

34. Although we do not now decide that section 4 is unconstitutional, it is difficult to distinguish this case from *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961):

We repeat and again reaffirm that neither a State nor the Federal Government can constitutionally force a person "to profess a belief or disbelief in any religion." Neither can constitutionally pass laws or impose requirements which aid all religions as against nonbelievers, and neither can aid those religions based on a belief in the existence of God as against those religions founded on different beliefs.

*Id.* at 495, 81 S.Ct. at 1683 (footnote omitted). *See also Roe v. Klein Indep. School Dist.*, No. H–80–1982 (S.D.Tex. Dec. 30, 1981) (question on teacher application form inquiring whether applicant believed in a supreme being unconstitutionally interferes with applicant's privacy rights).

35. For example, appellants will have to prove that section 4 in actuality led to the exclusion of atheists from judicial service. Appellants are not entitled to have their cases tried by atheists. They merely have the right to be tried by judges who were not selected from a group from which atheists were excluded. *Cf. Akins v. Texas*, 325 U.S. 398, 403–04, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945) (defendant has no right to proportional representation of his own race on jury, but state may not systematically exclude racial minorities from jury service).

1. Because I have no quarrel with the treatment of the Society of Separationists in Part IV of the majority opinion, I write as if O'Hair were the only plaintiff.

make, that section 4 excludes her from elective office.

O'Hair lacks standing to assert this claim. Article III of the federal Constitution "requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976)." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, —— U.S. ——, ——, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The plaintiff must

> allege specific, concrete facts demonstrating that the challenged practices harm [*her*], and that [she] personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of a "real need to exercise the power of judicial review" or that relief can be framed "no [broader] than required by the precise facts to which the court's ruling would be applied."

*Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975) (footnote and citation omitted).

O'Hair does not allege that she has attempted to or intends to seek elective office. Nor does she otherwise allege the actual or threatened injury necessary to confer standing. The majority, however, characterizes the insufficiency of O'Hair's pleading as mere inartfulness, and holds that the failure to allege specific facts demonstrating particularized harm does not bar O'Hair's claim. For this holding, the major-

ity relies on three cases of extraordinarily flimsy precedential value.

The entire discussion of standing in *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), the majority's principal authority, occupies a single footnote:

> Georgia's contention that no appellant has standing to raise [the claim that the limitation of school-board membership to freeholders violates the Equal Protection Clause of the fourteenth amendment] is without merit. The appellant Calvin Turner is a freeholder, but the appellant Joseph Heath is not. Heath's motion to intervene was granted by the District Court for the express purpose of adding a party plaintiff to the case to ensure that the court could reach the merits of this issue. Georgia also argues that the question is not properly before us because the record is devoid of evidence that the freeholder requirement actually has operated to exclude anyone from the Taliaferro County board of education. But the appellant Heath's allegation that he is not a freeholder is uncontested, and Georgia can hardly urge that her county officials may be depended on to ignore a provision of state law.

396 U.S. at 361, n.23, 90 S.Ct. at 541, n.23. This brief discussion includes no analysis of the standing requirement and has been cited by no relevant standing case in the twelve years since *Turner* was decided.[2] Moreover, if *Turner* had held that a person has standing to challenge the constitutionality of a law disqualifying him from public office without alleging facts demonstrating individual harm or prospective benefit from judicial interference, it would have been overruled by *Warth v. Seldin, supra*. But *Turner* did not so hold.

In *Turner*, the school board members were not elected, but were appointed by a county grand jury. The only qualifications

---

**2.** *Turner* has been cited in only one standing case of any sort. In *Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Comm'rs*, 622 F.2d 807, 815 (5th Cir. 1980), *cert. denied*, 450 U.S. 964, 101 S.Ct. 1479, 1480, 67 L.Ed.2d 613 (1981), a panel of this court cited *Turner*

not for any proposition having to do with the specificity of a plaintiff's allegations, but for the proposition that a civil suit may be maintained by the victims of a state's exclusionary practices.

698

for board membership were residency and freeholder status. There is no indication that prospective board members applied for the position or otherwise advanced their own candidacies. Thus, Heath, the nonfreeholder who had standing to challenge the freeholder requirement, had apparently alleged[3] everything any nonfreeholder could possibly have alleged: that he met all the qualifications for board membership except freeholder status, that the grand jury could not lawfully appoint him to the school board, and that he had not been appointed. The exclusion of nonfreeholders acted on Heath directly. Since he was separated from board membership neither by any other personal qualification, nor by a declaration of candidacy, nor by election, but only by the grand jury's failure to appoint him, he was, as *Warth v. Seldin* requires, directly and individually harmed by the challenged practice. By contrast, O'Hair's allegations do not suggest that she is directly harmed by the asserted exclusionary effect of section 4. Unlike Heath, she is separated from office, and from the asserted impact of section 4, by the absence of an attempt, or even an intention, to run for elective office.

The other two cases cited by the majority may be disposed of more quickly. *Matthews v. Handley*, 361 U.S. 127, 80 S.Ct. 256, 4 L.Ed.2d 180 (1959) (mem.), aff'g 179 F.Supp. 470 (N.D.Ind.1959) (three-judge court), has nothing whatever to do with standing. In *Matthews*, the district court dismissed for failure to state a claim a complaint by Indiana taxpayers alleging that the state income tax was unconstitutional because the state legislature had not been reapportioned as required by the Indiana Constitution. *See Baker v. Carr*, 369 U.S. 186, 203 n. 22, 82 S.Ct. 691, 702 n. 22, 7 L.Ed.2d 663 (1962). The opinion of the district court makes no mention of standing, and the affirmance by the Supreme Court is a memorandum decision.

*Baker v. Carr, supra*, held that residents of certain counties in Tennessee who were qualified to vote for members of the General Assembly had standing to maintain a suit for a declaration that state law effected an apportionment that deprived them of equal protection. Whatever limited application *Baker v. Carr* might have to O'Hair's standing to sue to vindicate her rights as a voter, the case has no application whatever to the claim O'Hair did allege, namely, that section 4 excludes her from public office. *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 223 n. 13, 94 S.Ct. 2925, 2933 n. 13, 41 L.Ed.2d 706 (1974).[4]

Thus, the majority's holding that O'Hair has standing to challenge section 4 as a prospective candidate for elective office is without precedential support. Such a deviation from settled standing requirements can only be ascribed to the notion that the vindication of cherished first amendment values counsels a relaxation of those requirements. The Supreme Court expressly repudiated this notion in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, —— U.S. ——, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), which held that a plaintiff alleging an Establishment Clause violation must identify a personal injury suffered "*as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which [he] disagrees." *Id.* at ——, 102 S.Ct. at 765.

> Nor can [earlier standing cases] be distinguished on the ground that [other constitutional provisions] are in some way less "fundamental" than the Establishment Clause. Each establishes a norm of conduct which ... government is bound to honor—to no greater or lesser extent

3. *Turner's* infirmity as authority for *any* proposition concerning the specificity of allegations necessary to confer standing is compounded by the fact that the case nowhere discloses Heath's allegations.

4. The majority, which states that, "these three cases require that we not demand the articula-

tion of subsidiary facts to support a general allegation of a voting rights violation," Majority Opinion at p. 690, appears to recognize that *Matthews v. Handley* and *Baker v. Carr* have no bearing on O'Hair's standing to challenge her exclusion from public office.

than any other inscribed in the Constitution. To the extent the Court of Appeals relied on a view of standing under which the Art. III burdens diminish as the "importance" of the claim on the merits increases, we reject that notion .... [W]e know of no principled basis on which to create a hierarchy of constitutional values or a complementary "sliding scale" of standing which might permit respondents to invoke the judicial power of the United States.

*Id.* at ———, 102 S.Ct. at 764–65. Although the majority pays lip service to *Valley Forge* in a footnote [5], its holding flies in the face of that decision.

Article III requires that the plaintiff allege not only injury, but also that the injury results from the putatively illegal *conduct of the defendant*, can fairly be traced to the challenged *action*, and is likely to be redressed by a favorable decision. See Slip op. p. 15133, p. 683, *supra*. Having indulged the fiction that O'Hair alleges injury *traceable to section 4*, the majority compounds its error by simply ignoring the fact that her complaint does not even imply that any defendant has engaged in or threatens to engage in illegal conduct. The district court cannot conceivably fashion relief that will benefit O'Hair. Crudely stated, it is impossible to ascertain what she would have the district court do to whom. Since O'Hair does not allege that any of the defendants has engaged in or threatens to engage in unlawful conduct that would injure her, injunctive relief would be inappropriate. Indeed, if O'Hair should ever run for public office and be excluded by the operation of section 4, there is no reason to suspect it will be through the conduct of any of the defendants in this case. Similarly, the benefit she would derive from a declaratory judgment, other than psychological gratification, is altogether indeterminate. Thus, the conclusion that O'Hair lacks standing because she alleges no injury is reinforced by the fact that she alleges no illegal conduct from which a favorable decision might provide relief.

## B.

Even if O'Hair had standing to challenge section 4, the district court nonetheless properly abstained from reaching the merits of her claim, because a decision on the merits could only be based upon a tentative interpretation of state law that should be made by the state courts. I have no quarrel with the majority's discussion of the principles of abstention, but only with its conclusion that section 4 unambiguously excludes atheists from public office in Texas. On the contrary, section 4 is fairly susceptible of an interpretation that would avoid the federal constitutional question.

Article I, section 4, of the Texas Constitution provides:

No religious test shall ever be required as a qualification to any office, or public trust, in this State, *nor shall anyone be excluded from holding office on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being.*

(emphasis added).

The majority asserts that the italicized language of section 4 unambiguously excludes atheists from public office in Texas, and that "there is no room in which the state courts could maneuver to obviate the necessity of constitutional adjudication." Majority Opinion at p. 694. I disagree. Section 4 is ambiguous, and one of its two interpretations conforms to the first amendment.

The italicized language may readily be interpreted to specify only that one who acknowledges the existence of a Supreme Being shall not be excluded from office on account of his religious sentiments, with no provision one way or the other for one who does not so acknowledge. This, indeed, is the literal meaning of the words; the exclusion of those who do not acknowledge a Supreme Being is a mere inference from the language of section 4. Just as the statement, "No person shall be ejected from the library, provided he is quiet," does not

---

**5.** See Majority Opinion at p. 688, n.18.

necessarily imply that one who is not quiet will be ejected, so section 4 does not necessarily imply that one who does not acknowledge the existence of a Supreme Being shall not hold office on that account.

I recognize that the literal interpretation of section 4 is not its natural meaning, and may not be its intended meaning. But the question is not whether the suggested interpretation is "correct," but rather whether it is sufficiently tenable to require construction by the state court. It is, because if Texas courts had the opportunity to interpret section 4, they would seek to interpret it so as to be constitutional.

Texas courts undertake to construe *statutes* so that the legislative intent to enact constitutional laws will be carried out. *Faulk v. Texas*, 608 S.W.2d 625, 630 (Tex. Cr.App.1980) (en banc). Consequently, even if a state law is unconstitutional on its face, Texas courts will seek to construe it so as to be constitutional. *Ex parte Groves*, 571 S.W.2d 888, 893 (Tex.Cr.App.1978) (en banc). Because the underlying policy is to effect the legislative purpose to enact constitutional statutes, the principle must apply equally to the construction of the state constitution, for the leading purpose in construing a constitutional provision is likewise to effect the intent of the drafters. *Gragg v. Cayuga Independent School Dist.*, 539 S.W.2d 861, 866 (Tex.), *appeal dismissed*, 429 U.S. 973, 97 S.Ct. 478, 50 L.Ed.2d 580 (1976); *Cox v. Robinson*, 105 Tex. 426, 150 S.W. 1149, 1151 (1912). Thus, there is no question but that section 4 is sufficiently ambiguous that a Texas court might construe it so as to be constitutional. Therefore, the district court correctly declined to exercise its jurisdiction. *Kusper v. Pontikes*, 414 U.S. 51, 54–55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973).

## II.

O'Hair alleges next that she is deprived of her constitutional right to a fair trial in Texas because section 4 prevents those who do not acknowledge a Supreme Being from being judges.[6] The majority takes at face value O'Hair's allegation that because of its unconstitutional discrimination against atheists, section 4 operates to deprive her of a fair trial. In fact, O'Hair's due process claim does not challenge the constitutionality of section 4.

As to each case she is litigating in Texas, O'Hair's due process claim is that she cannot get a fair trial because the presiding judge is biased against her. In attempting to establish her claim, O'Hair may undertake to prove that the judge is biased against atheists generally. O'Hair may offer as *evidence* of this bias against atheists Article I, section 4, of the Texas Constitution. Conceivably, a court deciding O'Hair's due process claim might even conclude that section 4 creates such a likelihood or such an appearance of unfairness as to raise an irrebuttable presumption that the affected judge is biased and therefore disqualified. But in no event is the propriety of a particular judge hearing O'Hair's case determined by the *constitutionality* of section 4. If section 4 does not violate the first amendment but nonetheless yields a biased judge, due process will not permit that judge to preside over O'Hair's case; conversely, even if section 4 does violate the first amendment, O'Hair's due process claim fails as to any unbiased judge. Seen for what it is, O'Hair's challenge to the fairness of her Texas trials thus poses no significant standing or abstention question, because it does not challenge the constitutionality of section 4.[7]

---

6. O'Hair also alleges that she cannot receive a fair trial because Texas systematically discriminates against atheistic jurors. The majority holds that this claim must be dismissed on abstention grounds. Although I disagree with the majority's analysis of O'Hair's claims as a litigant, I agree that the jury claim must be dismissed. I therefore restrict my discussion of O'Hair's claims as a litigant to the allegation concerning judges.

7. The cases cited by the majority for the proposition that criminal defendants and civil litigants have standing to challenge the composition of juries and the qualifications of judges on due process and equal protection grounds, see Majority Opinion at p. 690, are not to the contrary. None of the cited cases involves an

The remedies O'Hair seeks for the alleged due process violations are injunctions against the proceedings pending against her. These equitable remedies should be denied because sound jurisprudence requires "that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). *See also O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974). O'Hair has readily available to her an adequate remedy at law: a motion in each Texas court where she is a litigant to disqualify the judge on the ground that he is biased against her. O'Hair argues that she should not be required to seek this remedy from the very judge whom she alleges is biased. This contention is without merit. Motions to recuse are routinely made to the judges who are allegedly disqualified, and our judicial system demands the assumption that judges will hear such motions fairly.

I have indicated my rejection of the notion that O'Hair's challenge to the fairness of her Texas trials is a direct attack on the constitutionality of section 4. But even accepting that notion, as the majority does, the equitable relief sought should be withheld in light of the adequate remedy at law available to O'Hair. The majority's treatment of this settled principle is altogether inadequate. The majority states, "The panel majority argued that the possibility of an adequate remedy at state law for this claim provided sufficient reason to abstain. We disagree. Although the availability of an alternative state forum is a necessary condition for abstention, the mere availability of an alternative state remedy is not a sufficient basis to abstain." Majority Opinion at p. 694 (citations omitted). The majority badly misconceives the argument. The panel majority did *not* contend, nor do I now, that the availability of an alternative remedy at law calls for federal *abstention*. The point, rather, is that a party with an adequate remedy at law should be denied equitable relief. This is a doctrine of equity, not of comity. The majority's cases do illustrate that an adequate state remedy is an insufficient basis for *abstention*, but they have nothing whatever to do with withholding equitable remedies.

The majority's second response to the settled rule that equity should not act when there is an adequate remedy at law is that it is not clear that O'Hair has such a remedy because Article I, section 29, of the Texas Constitution purports to make the state bill of rights, which includes section 4, invulnerable to change. This argument fails for two reasons. First, since Texas judges must be presumed to uphold the federal constitution [8], we must presume that a Tex-

---

attack on the qualification of a judge to hear a case based on the method of his selection, nor does any of the cases remotely suggest that a due process challenge to a judge's impartiality may put in issue the constitutionality of *any* state law. Finally, none of the cited cases implies that constitutional values other than due process may be indirectly vindicated by a due process attack on the judge's qualification.

8. State judges as well as federal judges swear allegiance to the Constitution of the United States, and there is no reason to think that because of their frequent differences of opinions as to how that document should be interpreted that all are not doing their mortal best to discharge their oath of office. *Sumner v. Mata*, 449 U.S. 539, 548, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981). This statement is merely a recent reiteration of the principle that since state judges are required to uphold the United States Constitution, federal courts should not presume that they will do otherwise. As this court announced nearly twenty years ago in *Nesmith v. Alford*, 318 F.2d 110, 120 (5th Cir. 1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964), "We must, and do, assume that under the Supremacy Clause, Article 6 of the Constitution, [state] courts will construe state statutes and ordinances in keeping with federally paramount constitutional principles."

All Texas judges swear or affirm that, "I . . . will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State. . . ." Tex. Const. art. XVI, § 1. That oath or affirmation is in substance the oath or affirmation to support the Constitution of the United States required by U.S.Const. art. VI, cl. 3. *Van Hodge v. Texas*, 149 Tex.Cr.App. 64, 191 S.W.2d 24, 27 (1945).

In light of the Supremacy Clause and the oaths of office taken by state judges, the Su-

as judge will not decline to strike down one section of the Texas Constitution as unconstitutional because another section of the Texas Constitution tells him it is inviolate. Just as a Texas judge will not enforce section 4 if it is unconstitutional, so he will not shrink from his constitutional duty merely because section 29 purports to make section 4 impervious to change. Second, the majority, which concludes that "it is far from clear that [O'Hair has] an adequate remedy at state law," erroneously places on the defendants the burden to show that there is such a remedy. The party seeking equitable relief must establish the basic requisites of equitable relief, including the inadequacy of legal remedies. *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974). Thus, to the extent that the effect of section 29 is "far from clear," O'Hair has not carried her burden to show that she has no adequate remedy at law. That being so, equitable relief must be denied.

### III.

O'Hair's final claim is that she is excluded from jury duty because she does not acknowledge a Supreme Being. The majority holds that the district court must abstain from deciding this claim because it is uncertain whether jury service is a position of public trust within section 4. I would hold that O'Hair lacks standing to assert this claim because she alleges not that she has been excluded from jury service but only that she *would be*. However, I agree that even if O'Hair has standing, abstention is proper, both because of the uncertain application of section 4 noted by the majority and because of the ambiguous meaning of section 4 discussed in Part I of this dissent.

### IV.

In summary, O'Hair alleges no claim that she is deprived of the right to vote for atheistic candidates for public office. She lacks standing to complain that Article I, section 4, of the Texas Constitution excludes her from elective office, because she alleges no attempt or intent to run for such office, and because no relief the district court could fashion will benefit her. Even if she had standing to challenge section 4 on this basis, the ambiguity of section 4 mandates federal abstention.

O'Hair is not entitled to the equitable relief she seeks from Texas trials presided over by allegedly biased judges, because she has an adequate remedy at law for that claim.

I would hold that O'Hair lacks standing to complain that she is unconstitutionally excluded from jury service. However, I agree that the district court properly abstained from deciding that claim.

Since I would affirm the district court's dismissal of O'Hair's complaint, I dissent from those portions of the majority judgment to the contrary.

REAVLEY, Circuit Judge, with whom RONEY, GEE, GARZA and RANDALL, Circuit Judges, join, dissenting:

I would summarily affirm the district court's dismissal. The plaintiffs lack both standing and a controversy ripe for remedial intervention by the federal courts. Standing and ripeness may remain "opaque," as the majority puts it; but without an allegation that the plaintiff has been, or in all likelihood will be, injured because of the supposed unconstitutional conduct, the law I read says we are to dismiss the complaint. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, ——

---

preme Court has long maintained that "federal courts are 'not at liberty ... to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land ...,' " *Schlesinger v. Councilman*, 420 U.S. 738, 756, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975), *quoting Ex parte Royall*, 117 U.S. 241, 252, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886),

and has affirmed that relations between state and federal judiciaries should not be disturbed by "unnecessary conflict between *courts equally bound to guard and protect rights secured by the Constitution.*" *Rose v. Lundy*, —— U.S. ——, ——, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982), *quoting Ex parte Royall*, 117 U.S. at 251, 6 S.Ct. at 740.

U.S. ——, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

When the Supreme Court writes an opinion that holds a provision in a state constitution to conflict with the United States Constitution, federal courts should presume that state officials will follow the Constitution so declared, unless and until some state official refuses or fails to do so. The Supreme Court held in *Torcaso v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) that a state office may not be denied to one because of refusal to express a belief in a supreme being. We need not employ the vast prolixity and apparatus of the federal judiciary to repeat that holding simply because we find an unedited constitution with a nullified clause, the presence of which is objectionable to one who sues. It is the salutary purpose of the standing requirement that we not entertain lawsuits where there is no grievance or concrete dispute warranting judicial resolution and remedy. It is a peculiarly appropriate requirement for the suit now before us.

Plaintiffs say they are threatened and discriminated against by the Texas Constitution, but they never particularize. Their complaint rambles on about the pleaders' dissatisfaction with the laws and officials of Texas and about what plaintiffs want— from an order halting suits against them to an award of $5,250,000 for violation of their civil rights. They aver:

> By reason of the systematic descrimination (sic) as to judges and juries in said courts against persons who do not acknowledge the existence of a supreme being, Plaintiffs are deprived of their constitutional rights to a fair trial in each of said courts and as to each of the above stated cases now pending in said courts
> . . . .
> Enforcement of Article I, Section 4 of the Texas Constitution is intentionally descriminatory (sic) against a cognizable class of person on the basis of religion whereby real and immediate injury is sustained or direct injury is threatened to the property rights of the Plaintiffs. Article I, Section 4 of. the Texas Constitution proscribes the constitutional rights of Plaintiffs and others similarly situated to a fair trial as an incident of the systematic descrimination (sic) against those who do not acknowledge the existence of a supreme being in exclusion from judgeships, juries and other offices or public trusts of the State of Texas.

Nothing is said about an atheist actually being barred from holding office. Nothing about a vote denied or cast for a candidate barred from taking office. Just a clause in the Texas Constitution that plaintiffs feel "descriminates" against them because they do not acknowledge a supreme being. This will not keep plaintiffs in court under existing precedent, as Judge Tjoflat demonstrates.

It may be that the majority only permits the district court to render a declaratory judgment about the constitutionality of the clause in the Texas Constitution. Except for the waste of judicial effort to do the obvious, that judgment would itself do no harm. However, the language in the majority opinion about allowing this "challenge" to a system that excludes atheists from judicial duties and to a system that denies due process and equal protection to an atheist because of the unconstitutional composition of juries and selection of judges—this is disturbing talk, indeed. It is disturbing because it invokes a new policy in this circuit inviting broadside court challenges against disliked "systems" thought to conflict with the Constitution. And it is disturbing because it may suggest that the district court is supposed to correct "a system that excludes atheists" by striking down the system—officers, judges and all.

I dissent.