**BURLINGTON NORTHERN RAILROAD COMPANY, et al.**

v.

**PUBLIC UTILITY COMMISSION OF TEXAS, et al.**

**Civ. Nos. A–86–CA–079, A–86–CA–130.**

United States District Court, W.D. Texas, Austin Division.

May 23, 1986.

Edmund W. Burke, William A. Brasher, Ft. Worth, Tex., for Burlington Northern R. Co.

Richard P. Bruening, Kansas City, Mo., for The Kansas City Southern Ry. Co.

Phyllis B. Schunck, Wood, Lucksinger & Epstein, Stephen J. Davis, Steven Baron, Asst. Atty. Gen., Energy Div., Austin, Tex., for Public Utility Com'n.

## ORDER

NOWLIN, District Judge.

Came on to be heard this day Plaintiffs' Motion for Summary Judgment. The Court, having considered the Motion and the Opposition, as well as all of the affidavits and pleadings on file in this cause, is of the opinion that the Motion is meritorious, and should be GRANTED.

## I. BACKGROUND

On January 22, 1986, the Public Utility Commission of Texas (PUC[1]) entered a discovery order in two rate cases pending before it concerning the Gulf States Utilities Company (GSU). The discovery order lifted a protective order that had been entered in the case. That protective order prevented the public disclosure of certain contracts that had been filed with the PUC pursuant to the rate-making case. Included among those contracts were contracts between GSU and the Plaintiff Railroads.

The Railroads filed suit in this Court seeking an injunction, and a temporary restraining order was issued on February 10, 1986 preventing disclosure of the contracts. A preliminary injunction was later agreed to by the parties. Subsequently, on February 26, 1986, the PUC adopted an "emergency rule" that required any generating utility that served the State of Texas to file with the PUC certain contracts. Included among those contracts were all rail transportation contracts. The order did not protect such contracts from public disclosure. Thus, Plaintiff Railroads immediately filed a second action in this Court seeking injunctive relief from public disclosure of the contracts. An agreed preliminary injunction prohibiting the public disclosure was entered by the Court in this case as well. These cases were consolidated on March 13, 1986. It is undisputed that the contracts at issue were entered into under the authority of the Staggers Rail Act, 49 U.S.C. § 10101 *et seq.* (1986), and are filed with the Interstate Commerce Commission pursuant to the requirements of the Act.

Plaintiffs' First Amended Complaint seeks permanent injunctive relief on several bases. First, the Plaintiffs allege that the contracts at issue are protected from disclosure under the Staggers Rail Act. *Id.* Plaintiffs also argue that the contracts are protected from disclosure under the Texas Open Records Act, TEX.REV.CIV. STAT.ANN. art. 6252–17a, § 10 (Vernon Supp.1986); the Public Utility Regulatory Act, TEX.REV.CIV.STAT.ANN. art. 1446c, § 37 (Vernon Supp.1986); and the Administrative Procedure and Texas Register Act, TEX.REV.CIV.STAT.ANN. art. 6252–13a, § 14a (Vernon Supp.1986). The Plaintiffs also argue that disclosure of these contracts would constitute an unreasonable search and seizure of the railroads' property in violation of the Fourth and Fifth Amendments to the United States Constitution. Finally, the Plaintiffs state a cause of action under 42 U.S.C. § 1983, and seek attorney's fees under 42 U.S.C. § 1988.

---

1. When using the term "PUC," the Court in this Order refers to all Defendants.

## II. JURISDICTION

 In a motion to dismiss filed by the PUC on April 16, 1986, the State questions whether the Court has jurisdiction over the PUC. They argue that the complaint should be dismissed because the Eleventh Amendment bars any action against a State unless the State has consented to that suit. The Defendants cite *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam) for this proposition. The PUC's statement of the law is incorrect. This Court may order prospective injunctive relief against State officials to bring their conduct into compliance with federal law. *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In the case of *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court reaffirmed that prospective injunctive relief is permissible under the Eleventh Amendment. *Id.* at 677, 94 S.Ct. at 1362. *See also, Pennhurst State School Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984). The Plaintiffs ask only for prospective injunctive relief. The Court therefore has jurisdiction over these claims.

## III. SUMMARY JUDGMENT

Summary judgment is proper only where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the opposing party, and it must indulge all reasonable inferences in that party's favor. *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.1980).

## IV. THE STAGGERS ACT

Plaintiffs' argue that the Staggers Rail Act of 1980, 49 U.S.C. § 10101 *et seq.* (1986), preempts any state law in this area, and prohibits the disclosure of the contracts at issue. As Plaintiffs correctly state, this question is solely a question of law. In order to decide this issue, the Court must scrutinize the Act and its purpose.

Two panels of the Fifth Circuit and a panel of the Second Circuit have previously discussed in length the historical background of the Staggers Act. Rather than reiterate principles of settled law, the Court would refer the reader to those decisions. *Water Transport Association v. Interstate Commerce Commission*, 722 F.2d 1025 (2nd Cir.1983); *State of Texas v. United States*, 730 F.2d 339 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984) (*Texas I*); *State of Texas v. United States*, 730 F.2d 409 (5th Cir.1984), opinion partially withdrawn and substituted, 749 F.2d 1144 (5th Cir.1985), *cert. denied*, —— U.S. ——, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985) (*Texas II*). The Court will outline only the relevant portions of those decisions here.

The Staggers Rail Act of 1980 was enacted to revitalize the rail systems in the United States, which had been struggling under heavy regulation throughout the two previous decades. The process of deregulating the railroads began in 1973, with the passage of the Regional Rail Reorganization Act. In 1976, the Railroad Revitalization and Regulatory Reform Act was passed. In 1980, finding that further legislation was necessary, the Congress passed the Staggers Act. The Act made "dramatic changes designed to give carriers the freedom to set competitive rates determined mainly by market forces." *Texas I* at 345. The Act instituted a major shift of regulatory authority away from state governments and into the hands of the federal government. As the panel in *Texas II* noted, the Act did this in three interrelated ways:

It preempts all state jurisdiction over general rate increases. It also prohibits a state from exercising any jurisdiction over intrastate rail transportation provided by an interstate rail carrier unless the state authority "exercises such jurisdiction exclusively in accordance with the provisions of" the Act. The Act preempts all state regulation unless the ICC certifies that state standards and procedures are in accordance with the

Act, and an uncertified state authority may not exercise any jurisdiction over intrastate rates. In addition, any carrier providing interstate transportation regulated by the ICC may petition the ICC "to review the decision of any State authority, in any administrative proceeding in which the lawfulness of an intrastate rate, classification, rule, or practice is determined, on the grounds that the standards and procedures applied by the State were not in accordance with the provisions of" the Act.

*Id.* at 413 (citations omitted). As the Court in *Texas I* summarized, "although the Staggers Act grants the states the option of continuing to regulate intrastate rail rates, the Act is in nature a preemptive statute. If a state wishes to continue regulating, it must do so in accordance with federal policy." *Texas I* at 347.

The State of Texas was provisionally certified to exercise jurisdiction over intrastate rail transportation. *Texas II* at 413, n. 15. The State was later decertified, however, and that decertification was affirmed in *Railroad Commission of Texas v. United States*, 765 F.2d 221 (D.C.Cir. 1985). One of the main reasons for decertification noted by the Court was the State's insistence on disclosing rail contract terms not permitted to be disclosed under federal law. *Id.* at 232. Indeed, as *Texas I* and *Texas II* demonstrate, Texas has consistently attempted to make public the terms of rail transportation agreements. In *Texas I*, the State attacked the Staggers Act, arguing that it was unconstitutional. *Texas I* at 343–44. In *Texas II* the State challenged an ICC requirement that Texas approve a tariff for intrastate rail transportation of wheat that did not disclose the rate. Texas argued that the rate was an "essential" term under 49 U.S.C. § 10713(b), and thus had to be made public. *Texas II* at 411. In both cases, the State was unsuccessful. It appears that this suit involves yet another attempt by the State to disclose the terms of rail transportation contracts.

As noted earlier, one of the dramatic changes enacted by the Staggers Act was allowing carriers to set their rates by contract. In order to provide a free market setting to the railroads, the Act provides for the confidentiality of contract terms. Only "essential terms" are to be made public, in tariff format. 49 U.S.C. § 10713(b). The ICC has interpreted "essential terms" to include, in this context, only the names of the contracting parties, the goods to be transported, the duration of the contract, rail car data, and the existence (but not the terms or amounts) of special features such as credit terms or discounts. 49 C.F.R. § 1312.41(d)(2) (1985). This interpretation of "essential terms" has been upheld by the Fifth Circuit. *Texas II*. As the Court in *Texas II* stated, "the clear implication of th[e] language [of 49 U.S.C. § 10713(b)] is that certain contract terms are to remain undisclosed to the general public." *Texas II* at 416–17. Thus,

> the overriding thrust of the Staggers Act is to protect the confidentiality of the contract provisions and to permit the purchasers of transportation and railroads a degree of confidentiality similar to that of other businesses throughout the country.

*Goldstein v. Interstate Commerce Commission*, No. 82–1511, slip op. at 8 (D.D.C. July 20, 1984) (citation omitted). It is in this context that the Court must decide the preemption question.

## V. PREEMPTION

■ There is no question that the Staggers Act preempts the ability of the Railroad Commission of Texas to disclose the contracts at issue. *Texas II*. The question presented by this Motion is whether that preemption extends to the PUC's disclosure.

The State argues that the Staggers Act does not preempt the PUC from disclosing the contracts because the Act only preempted the regulatory authority of state agencies that regulate *rail* transportation. The Act did not, they argue, affect the ability of a *utility* regulatory body to disclose rail contracts. This argument fails

for several reasons. First, on its face it is illogical and borders on the absurd. The State essentially is arguing that although the Railroad Commission would violate the Staggers Act if it disclosed the instant contracts, the PUC would not violate the Act by disclosing the exact same contracts. To hold as the PUC would have this Court hold would require that the Court attribute an intent to Congress that clearly was not present. Congress clearly intended that confidential terms of Staggers Act contracts remain just that. The Second Circuit discussed Congress' intent in maintaining the confidentiality of Staggers Act contracts in its *Water Transport* opinion:

> The statute was rewritten in the Conference Committee to provide that, although the entire contract had to be filed with the Commission, only the *essential* terms and *non-confidential* summaries had to be published. This narrowed considerably the earlier Senate bill's disclosure provision and recognized a need for confidentiality with respect to some contractual provisions.
>
> This recognition is not surprising since contracts generally are confidential and, absent a specific legislative purpose, there is no reason to treat rail contracts differently. Indeed, it has long been recognized under the antitrust laws that public disclosure of contract terms can undermine competition by stabilizing prices at an artificially high level.

*Water Transport*, 722 F.2d at 1031–32 (citations omitted) (emphasis in original). To rule that the PUC is not bound by the confidentiality provisions of the Staggers Act simply because the PUC regulates utilities, not railroads, would require ignoring the clear intent of Congress.

Further, *Texas I* and *Texas II* appear to have resolved the question of the preemptive reach of the Staggers Act. In *Texas I* the Court, after discussing the purpose of the Staggers Act, stated that:

> When Congress seeks to end a situation of conflicting regulatory schemes and to establish uniform regulatory standards,

it has clearly manifested its intent to preempt state laws.

*Texas I* at 347 (citations omitted). The Court then reviewed the legislative history of the Act, quoting the following passage:

> The conferees' intent is to ensure that the price and service flexibility and revenue adequacy goals of the Act are not undermined by state regulation of rates, practices, etc. which are not in accordance with these goals. Accordingly, the Act preempts state authority over rail rates, classifications, rules, and practices. States may only regulate in these areas if they are certified under the procedures of [section 214].

*Texas I* at 348, *citing* H.Conf.Rep. No. 1430, 96th Cong., 2d Sess. note 4 at 106, *reprinted in* 1980 U.S.CODE CONG. & AD.NEWS 4110–11, note 4, at 4138. These statements make it clear that the Act was intended to preempt inconsistent state law, whether it be the rules of the state agency that directly regulates rail transportation, or another agency indirectly affecting the industry.

If the preemptive scope of the Act was not made clear by *Texas I*, the *Texas II* Court ended the debate when it stated:

> Preemption of state power by implication, Texas contends, is not favored. But congressional intent to preempt state authority could not be much more explicit than it is in this instance. As we have noted, Congress preempted all state jurisdiction over general rate increases and prohibited a state from exercising any jurisdiction over intrastate rail transportation unless it does so 'exclusively in accordance with the provisions' of the Act, as determined by the ICC. That Congress did not explicitly mandate the confidentiality of contract rates does not contravene *other clear evidence of legislative intent to preempt general state authority over disclosure of contract terms, when such authority is inconsistent with federal standards.*

*Texas II* at 418–19 (emphasis added). The Court's use of the phrase "general state authority" closes the door on the State's

argument that the Act intended to preempt only the authority of State rail regulatory bodies. Indeed, such a result only makes sense. As stated earlier, if Texas could avoid the requirements of the Staggers Act by requiring the filing of railroad contracts with a non-rail regulatory body, the "explicit," *id.*, and "unmistakable," *Texas I* at 347, preemptive effect of the Act would be quite hollow.

Moreover, even if the preemptive reach of the Act was an open question, the result would be the same. Generally, state law can be preempted in two ways. First, if Congress evidences an intent to occupy a field, any state law falling within that field is preempted. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) *citing Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 203–204, 103 S.Ct. 1713, 1721–1722, 75 L.Ed.2d 752 (1983). Second, if Congress has not displaced an entire field, state law is still preempted to the extent it actually conflicts with federal law. *Id.* This conflict can occur in two ways. It may be impossible to comply with both state and federal law, or the state law may stand as an obstacle to the accomplishment of the full purposes and objectives of Congress. *Id.* Application of these principles to the instant case requires the Court to conclude that the Act precludes the PUC from releasing the contracts.

There is no question that Congress evidenced an intent to occupy a field when it passed the Staggers Act. As the Fifth Circuit noted in *Texas I*, "the Act is in nature a preemptive statute." *Texas I* at 347. A state may only regulate railways if it is certified to do so by the ICC. 49 U.S.C. § 11501(b)(1)–(3) (1986). Texas is not so certified, *Railroad Commission*, 765 F.2d 221, so it may not exercise *any* jurisdiction over rail transportation. There can be no question, therefore, that at least as to Texas, the Staggers Act has occupied the entire field of rail regulation. More specifically, the Act has occupied the field insofar as confidentiality of rail contracts is

concerned. Thus, in *Texas II* the Fifth Circuit found that

> congressional intent to preempt state authority could not be much more explicit than it is in this instance.... That Congress did not explicitly mandate confidentiality of contract rates does not contravene other clear evidence of legislative intent to preempt general state authority over disclosure of contract terms, when such authority is inconsistent with federal standards.

*Texas II* at 418–19 (citations omitted).

Further, there is no question that the PUC rule requiring public filing of contracts, including rail transportation contracts, is a rule that "fall[s] within" the field occupied by the confidentiality provisions of the Staggers Act. *See Silkwood*, 464 U.S. at 248, 104 S.Ct. at 621. The rule allows the disclosure of contracts expressly made confidential by the Act and the regulations implementing the Act. Thus, under the first type of preemption noted above, the PUC's rule is preempted.

Further, under the second form of preemption the rule also fails. The rule at issue definitely stands "as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id. citing Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *Pacific Gas & Electric*, 461 U.S. at 204, 103 S.Ct. at 1722. As noted by the Court in *Goldstein*,

> the overriding thrust of the Staggers Act is to protect the confidentiality of the contract provisions and to permit the purchasers of transportation and railroads a degree of confidentiality similar to that of other businesses throughout the country.

*Goldstein*, slip op. at 8. There is no doubt that this objective of confidentiality will be thwarted by the PUC's planned publication of the contracts. The State argues, however, that such preemption should not be found unless the state and federal schemes are irreconcilable. *See DeCanas v. Bica*, 424 U.S. 351, 357 n. 5, 96 S.Ct. 933, 937 n. 5, 47 L.Ed.2d 43 (1976). While the State is

correct in this assertion, it does not help their case. It is difficult for this Court to imagine a more irreconcilable pair of rules. The Staggers Act prohibits disclosure of the contracts. The PUC rule requires the *public* filing of the same contracts.

The State argues nonetheless that the important state interest furthered by disclosure of the contracts prevails in this case, because disclosure does not frustrate the intent of the Act. In support of this theory the State asks the Court to "see generally" *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). The State has misinterpreted *Kewanee. Kewanee* does not require a balancing of *interests* served by the conflicting rules, but rather an analysis of the objectives of the rules and whether the objectives conflict. The ultimate objective of the confidentiality provisions of the Staggers Act is to allow railroads to contract in a free market setting, with their contracts kept secret as in other business contexts. The stated objective of the PUC's decision to publish the contracts is to provide the public with the basis to understand the PUC's decisions on rates, so as to protect the integrity of the PUC's decisionmaking process.[2] These objectives necessarily conflict. To make the information public, the PUC *must* frustrate the objective of the Staggers Act. Moreover, even if the Court assumes that the State's interest in publishing the contracts is as great as alleged, the interest is not so strong as to make the conflict reconcilable. As the Court in *DeCanas* stated, "even state regulation designed to protect vital state interests must give way to paramount federal legislation." *DeCanas*, 424 U.S. at 357, 96 S.Ct. at 937. The Court is of the opinion that the legislative history and cases construing the Staggers Act clearly show it to be paramount federal legislation. Thus, the PUC's rule must give way.

## VI. APPROPRIATENESS OF SUMMARY JUDGMENT

The State argues that summary judgment is not proper at this time because two fact disputes remain. First, they contend that there is a dispute over what portions of the rail contracts, if any, are in the public domain. Second, they allege that a fact dispute remains over the interest of the PUC in disclosing the contracts. Neither of these alleged fact disputes prevent the Court from entering summary judgment.

The question of whether the documents at issue are already in the public domain is a question that is irrelevant to the disposition of the issue before the Court. The State argues that:

> Congress did not intend the Staggers Act to preclude anyone from publicly disclosing contractual information already in the public domain.

Brief in Opposition to Motion for Summary Judgment at 12. Conspicuously absent from this statement is any citation of authority. Perhaps one reason the State cites no authority is that there is nothing in the Act that even suggests there is a "public domain" exception to the confidentiality protection of the Act. The Court has been able to find no cases, nor has any party cited the Court to any authority that supports the State's argument. Indeed, the State offers only a common law trade secret analysis in support of this argument. There is no indication in the Act that the confidentiality provisions are to be tempered by trade secret law, and the Court is unwilling to imply such an exception. The face of the statute is clear: all but essential terms are to remain undisclosed; there is no exception stated. Thus, even assuming that a fact issue exists as to whether or not the contract terms are in the public domain, this issue is not relevant to the

---

2. The Court would note that the State's argument on this point is interesting in light of the State's position that all of the information in the rail contracts is already in the public domain. Indeed, it seems odd that the State would expend the funds on this, and previous cases, if the information was already available to the public. Nevertheless, the Court will assume for the purposes of this argument, that disclosure by the PUC is necessary for public knowledge.

Staggers Act issue, and therefore is not an obstacle to granting summary judgment.

 Similarly, the alleged fact dispute concerning the State's interest in releasing the documents is not a bar to granting summary judgment. First, it does not appear to the Court that there is any such dispute. Rather, the Railroads disagree with the *balance* the State suggests. Second, the importance of the State interest, in a preemption context, is a question for the Court, not the jury. It is not a genuine issue *for trial.* Third, as can be seen from the Court's discussion, the Court reached the issue only as an alternative basis for judgment. The question is not one that is essential to granting of the motion. Finally, the Court, in addressing the issue, assumed that the State's interest was as great as the State alleged. Even with such an assumption, summary judgment was proper. Thus, there is no genuine issue for trial on this question. Summary judgment is therefore appropriate.

## VII. ATTORNEY'S FEES

The Plaintiffs argue that they are entitled to attorney's fees under 42 U.S.C. § 1988, because they pled a cause of action under 42 U.S.C. § 1983 and they are the prevailing party. As is obvious, the Court did not reach the merits of Plaintiffs' section 1983 claim in disposing of this case. In order to award the Plaintiffs their attorney's fees, the Court would have to reach the merits of that claim. The Court is unwilling, and unable, to do that at this time. Thus, the Court cannot say that Plaintiffs are prevailing parties on their section 1983 claim. An award of attorney's fees under section 1988 would therefore be inappropriate.

## VIII. CONCLUSION

Because there is no genuine issue of material fact, and because Plaintiffs are entitled to judgment as a matter of law, the Court will GRANT the Plaintiffs' Motion for Summary Judgment. IT IS THEREFORE ORDERED that the PUC, its members, staff, or those acting on its behalf may not publicly disclose or commit any act that results in the public disclosure of any Burlington Northern or Kansas City Southern rail transportation contract filed with the Interstate Commerce Commission. ACCORDINGLY, JUDGMENT is entered for the Plaintiffs. All parties to bear their own costs.