**MISSOURI PACIFIC RAILROAD COMPANY, et al.**

v.

**RAILROAD COMMISSION OF TEXAS and its members, Hon. James E. Nugent, Hon. Mack Wallace and Hon. Clark Jobe.**

**Civ. No. A–86–CA–406.**

United States District Court,
W.D. Texas,
Austin Division.

Jan. 27, 1987.

---

Robert B. Burns, Jr., Karl G. Johnson, Jr., Wilson, Grosenheider & Burns, Austin, Tex., for Missouri Pacific R. Co., Southern Pacific Transp. Co., The Atchison, Topeka and Santa Fe Railway Co., Burlington Northern R. Co., Missouri-Kansas-Texas R. Co., St. Louis-Southwestern Railway Co., Kansas City Southern Railway Co., and, Louisiana and Arkansas Railway Co.

Douglas Fraser, Energy Div./Transp., Austin, Tex., for defendants.

## ORDER

NOWLIN, District Judge.

Before the Court is the Plaintiffs' Motion for Partial Summary Judgment. The Court has considered the motion and the response of the Defendants in light of the entire file in this cause, and is of the opin-

ion that the motion is meritorious and must GRANTED.

## I. BACKGROUND

In response to the deterioration of railroad tracks, roadbed and safety equipment, Congress enacted the Federal Railroad Safety Act of 1970, Pub.L. No. 91–458, 84 Stat. 971 (1970) (current version at 45 U.S.C. §§ 421–441 (1986)). Congress specifically considered the role states would play in railway safety regulation:

> With the exception of industrial or plant railroads the railroad industry has very few local characteristics. Rather in terms of its operations, it has a truly interstate character calling for a uniform body of regulation and enforcement. It is a national system.... To subject a carrier to enforcement before a number of different state administrative and judicial systems in several areas of operation could well result in an undue burden on interstate commerce.

H.R. REP. No. 1194, *reprinted in* 1970 U.S. CODE CONG. & AD. NEWS 4104, 4110–11. The Federal Railroad Safety Act is specifically designed to promote and regulate safety in all areas of railroad operation 45 U.S.C. §§ 421, 431 (1986). The United States Secretary of Transportation is charged with the duty to prescribe all necessary rules, regulations, orders and standards for all areas of railroad safety. *Id.* § 431. The Secretary of Transportation has delegated these responsibilities to the Administrator of the Federal Railroad Administration (FRA), a unit of the Department of Transportation. 49 C.F.R. § 1.49(m) (1985).

The Texas Railroad Commission has adopted a series of regulations that address rail safety issues. TEX. R.R. COMM'N, 16 TEX.ADMIN.CODE § 5.616–5.621 (hereinafter cited as 16 T.A.C. § ＿＿). Sections 5.616 and 5.618 require that the railroads file various reports, codes and wayside detector map with the Texas Railroad Commission. Section 5.617 demands that a fire extinguisher and a first aid kit be installed in every caboose and locomotive. Section 5.619 prescribes construction of walkways along tracks, in or adjacent to roadbeds, in yards or terminals, and in other locations frequented by various workmen. Finally, section 5.620 regulates the existence of visual obstructions at public grade crossings. Specifically, section 5.620(b) attempts to regulate vegetation control standards for. the roadbed and adjacent area.

These proposed rules were announced by the Railroad Commission on December 6, 1985. Public comments were solicited and received by the commission, but no public hearing was held. The rules were adopted on June 3, 1986 and became effective on June 25, 1986.

On July 22, 1986, the Plaintiff railroads filed the instant complaint for declaratory relief as well as preliminary and permanent injunctive relief. The complaint alleges that the subject regulations are preempted by federal law; constitute an undue burden on interstate commerce and a deprivation of property without due process of law; constitute an unlawful and unauthorized exercise of power under Texas law; and, amount to an arbitrary and capricious action, unsupported by substantial evidence.

The Railroad Commission timely answered, and on October 1, 1986, the Plaintiffs filed their motion for partial summary judgment. Plaintiffs' motion seeks summary judgment on four (4) grounds alleged in their original complaint. They allege that 16 T.A.C. §§ 5.617, 5.619 and 5.620(b) are specifically preempted by federal law and regulation. Specifically, they argue that the FRA has completely occupied the area of regulation addressed by sections 5.619 and 5.620(b). Further, they allege the subject matter of section 5.617 has been totally preempted by the Locomotive Boiler Inspection Act, 45 U.S.C. § 23 (1986). Second, Plaintiffs allege that sections 5.616–5.620 are preempted by 45 U.S.C. § 434, in that they have state-wide application and therefore fail to address a *local* safety hazard. Third, Plaintiffs argue that 45 U.S.C. § 434 preempts sections 5.619 and 5.620(b) because each creates an

undue burden on interstate commerce. Finally, Plaintiffs contend that sections 5.619 and 5.620(b) create an undue burden on interstate commerce outside the context of 45 U.S.C. § 434.

The Defendants' response to Plaintiffs' motion was to be filed with the Court on October 16, 1986. The Defendants, however, filed a Motion for Continuance that specifically plead that the Defendants lacked the requisite knowledge to controvert certain issues by affidavit. Defense counsels' appended affidavit stated that the Defendants needed to take depositions and conduct other discovery before they could fully respond. Plaintiffs opposed the motion and moved for a temporary restraining order noting that the compliance date set forth in the subject regulations was October 25, 1986. The Defendants replied that while the "Commission cannot agree to the Temporary Restraining Order, the Commission does not at this time contest entry of the requested TRO." Thereafter, the Court considered the application in light of the Defendants' response and entered a Temporary Restraining Order on October 23, 1986. The following day the Court granted the Defendants' Motion for Continuance and ordered that Defendants respond to the Plaintiffs' Motion for Partial Summary Judgment on or before November 5, 1986.

The Defendants' response was timely filed and addressed most of the issues raised by Plaintiffs. The record reflects that in preparation of their response the Defendants took no depositions, did not attempt to take depositions, and propounded no discovery to Plaintiffs despite the protestation in their Motion for Continuance. Further, despite an absence of "requisite personal knowledge to support a sworn affidavit," Defendants did submit controverting affidavits.

The Defendants' response consisted of an Opposition to Plaintiffs' Motion for Partial Summary Judgment, and a Motion for Dismissal Under Rules 12(b) and 12(c) and for Summary Judgment. The Defendants' Motion to Dismiss alleges that the Plaintiffs lack standing to bring this action, no case or controversy exists, the action is not ripe for adjudication, no federal question jurisdiction exists, and that *Pullman* abstention is appropriate in this case. The Court will first address these threshold jurisdictional issues.

## II. JURISDICTION

The Plaintiffs' original complaint states that "[t]he jurisdiction of this Court is based upon a federal question, and is invoked pursuant to 28 U.S.C. § 1331 (Supp. 1986), 28 U.S.C. § 2201 (Supp.1985) and 45 U.S.C. § 421–441 (1972 and Supp.1986)." Section 1331 confers original jurisdiction on district courts to adjudicate "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 (1986). Plaintiffs' complaint in this case invokes the Supremacy Clause and the Commerce Clause of the United States Constitution, and specific provisions of the Federal Railroad Safety Act and the Locomotive Boiler Inspection Act as bases for their claims.

 Parties that assert federal question jurisdiction need not prove in advance that they will ultimately prevail on the merits of their federal claims. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). "Rather, the party asserting jurisdiction need only advance plausible, colorable claims that 'arise under' federal law." *Rollins Environmental Services, Inc. v. Parish of St. James*, 775 F.2d 627, 631 (5th Cir.1985). In short, there must be a case or controversy. A case or controversy exists when "the conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." [1] *Railway Mail*

---

1. Traditional notions of ripeness and justiciability have been almost inextricably intertwined in recent decisions. *Peyote Way Church of God v.*

*Smith*, 742 F.2d 193, 198–99 (5th Cir.1984). C. WRIGHT, A. MILLER & E. COOPER, *Federal Practice and Procedure* § 3529 n. 23 (1984 and

*Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945); *e.g., KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922, 927 (5th Cir.1983). The imminence of the harm, the adversariness of the parties' positions, and the reality of injury to the Plaintiffs are all factors to be considered in determining whether a question is abstract. *KVUE*, 709 F.2d at 927. An action, however, may arise under federal law when "in order for the Plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." *Franchise Tax Board v. Construction Laborers Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). In fact, the Supreme Court has stated that a "plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *Braniff International, Inc. v. Florida Public Service Comm'n*, 576 F.2d 1100, 1105 (5th Cir. 1978).

■ In order to avoid dismissal under FED.R.CIV.P. 12, the issue presented cannot be insubstantial, *i.e.*, obviously without merit or foreclosed by prior decisions. *New Orleans Public Service, Inc. v. City of New Orleans*, 782 F.2d 1236, 1241 (5th Cir.1986); *In re Carter*, 618 F.2d 1093, 1103 (5th Cir.1980), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). If there is "any foundation to the claim, federal jurisdiction exists." *Meason v. Bank of Miami*, 652 F.2d 542, 547 (5th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1428, 71 L.Ed.2d 649 (1982). Further, Plaintiffs must have standing to present

that claim. Plaintiffs must have "allege[d] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *accord, Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968); *O'Hair v. White*, 675 F.2d 680, 686 (5th Cir.1982). Thus, Plaintiffs must demonstrate that they have suffered some threatened or actual injury from an allegedly illegal action. *Id. (citing Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975)).

■ The Plaintiffs' complaint alleges seven causes of action. The first three contain their federal preemption allegations; the fourth and fifth allege federal constitutional violations, the sixth cause states an action under Texas law, and the last cause complains of arbitrary and capricious state action. It is apparent to the Court that in light of the principles set forth above, this case involves claims that clearly present a federal question. The Court finds that this controversy is a real and substantial dispute between adverse parties; it is neither hypothetical nor abstract. Moreover, it is clear that the Plaintiffs have alleged a threatened or actual injury from alleged illegal activity of the Defendants, and therefore have standing to assert these claims. Accordingly, this Court's jurisdiction over six of Plaintiffs' seven causes has been properly invoked pursuant to 28 U.S.C. §§ 1331 and 2201. *Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14; *Rollins*, 775 F.2d at 631; *KVUE*, 709 F.2d at 927; *Braniff*, 576 F.2d at 1105. The Court has pendent jurisdiction over Plaintiffs' remaining claim,

Supp.1986). Suffice to say that the pleadings on file demonstrate that Plaintiffs have presented a ripe claim. Perhaps the best demonstrative evidence of sufficient immediacy in this case was that presented in support of the Court's determi-

nation that Plaintiffs' application for a temporary restraining order was meritorious; this controversy is clearly ripe. *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972).

brought under Texas law, pursuant to *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Defendants' reliance on the *dicta* of *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) for the proposition that no case or controversy exists in this action, is at best, misplaced. In *Wycoff*, the Court stated: "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine if there is federal question jurisdiction in the District Court...." *Id.* at 248, 73 S.Ct. at 242. The Fifth Circuit addressed *Wycoff* in *Braniff International, Inc. v. Florida Public Service Commission*, 576 F.2d 1100 (5th Cir.1978). The Court noted that several circuits had relied upon *Wycoff* for the proposition that all declaratory actions based upon federal preemption were improper. *Braniff*, 576 F.2d at 1104–05. The Court, however, declined to adopt this rule and held:

> where a party seeks injunctive and declaratory relief based upon the unconstitutionality of a state statute, and where there are no other concrete impediments to a proper exercise of federal-question jurisdiction, the mere fact that the constitutional claims might be raised before a state administrative body charged with enforcement of the statute does not alone deprive the court of jurisdiction.

*Id.* at 1106 (citations omitted). Accordingly, this Court is of the opinion that *Wycoff* does not require dismissal of this action.

### III. ABSTENTION

 Defendants also allege that this Court should abstain from this action pursuant to *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Before a federal court can abstain from the exercise of federal jurisdiction under *Pullman*, the Court must find that the case presents a "difficult, obscure, or unsettled issue of state law, the resolution of which could eliminate or substantially narrow the scope of the federal constitutional issue." *Nissan Motor Corp. v. Harding*, 739 F.2d 1005, 1008 (5th Cir.1984) (*citing Pullman*, 312 U.S. at 496, 498–99, 61 S.Ct. at 643, 644); *O'Hair v. White*, 675 F.2d 680, 692 (5th Cir.1982) (en banc). Abstention is the exception rather than the rule. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). This action presents no difficult, obscure or unsettled issues of state law, the resolution of which could eliminate or substantially narrow the scope of the constitutional issues presented by the Plaintiffs. In short, abstention in this case is wholly inappropriate and would amount to an abuse of discretion.

### IV. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is to be granted if the record reveals no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. In deciding this question the Court should view the evidence in the light most favorable to the party resisting summary judgment and should indulge all reasonable inferences in favor of that party. *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.1980).

#### (1) *Preemption*

 The Supremacy Clause, U.S. CONST. art. VI, cl. 2, nullifies state laws that "interfere with or are contrary to" federal law. *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (*quoting Gibbins v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)); *Rollins*, 775 F.2d at 634. Congress is authorized to absolutely preempt state and local rulemaking authority in a particular field. *Pacific Gas & Electric Co. v. State Energy Resources Comm'n*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–1722, 75 L.Ed.2d 752 (1983); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305,

1309, 51 L.Ed.2d 604 (1977). "Even where Congress has not entirely displaced state and local rulemaking in a specific area, those lower laws are preempted to the extent that they conflict with federal law. Where a lower law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), it is preempted." *Rollins*, 775 F.2d at 634. Congressional intent to preempt state law in a given area may be inferred from the existence of a comprehensive scheme of federal regulation. *Hillsborough*, 105 S.Ct. at 2375. Preemption is also inferred when the area of law is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Finally, state laws can be preempted by federal regulation as well as by federal statute. *Hillsborough*, 105 S.Ct. at 2375 (*citing Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984)).

In the Federal Railroad Safety Act, 45 U.S.C. §§ 421–441 (1986), Congress specifically declared that regulations relating to railroad safety shall be nationally uniform to the extent practicable.

> The Congress declares that laws, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order,

or standard, and when not creating an undue burden on interstate commerce. 45 U.S.C. § 434 (1986). Thus, when the Secretary of Transportation promulgates rules or regulations that cover rail safety, a state may adopt or continue in force similar laws, rules or regulations only

> 1) when necessary to eliminate or reduce an essentially local safety hazard, and
>
> 2) when not incompatible with any federal provision, and
>
> 3) when not creating an undue burden on interstate commerce.

A state must establish each of the elements of this narrow exception to preemption if its rules or regulations that cover a federally addressed railroad safety matter are to survive preemption. *Id.; National Ass'n of Regulatory Utilities Commissioners v. Coleman*, 542 F.2d 11, 13 (3rd Cir.1976).

Thus, if no federal regulation covers a rail safety matter, states are free to regulate the area. By the same token, if federal regulation completely occupies a rail safety matter, all state regulation is preempted. If federal regulations address a rail safety matter but do not wholly occupy the field, state regulation is permitted when the three-prong test of section 434 is met.

Obviously, the key inquiry to a resolution of this dispute is to what extent the Federal Rail Safety Act has covered the subject matter of rail safety. This determination turns on the definition of "covering the subject matter," a key phrase contained in section 434. The phrase is not defined in the statute; however, an analysis of the Congressional intent in enacting section 434 sheds light on the meaning of the phrase.

> [The rail industry] has a truly interstate character calling for a uniform body of regulation and enforcement. It is a national system.... The integral operating parts of these companies cross many State lines. In addition to the obvious areas of rolling stock and employees, such elements as operating rules, signal systems, power supply systems, and communication systems of a single company

normally cross numerous State lines. To subject a carrier to enforcement before a number of different State administrative and judicial systems in several areas of operation could well result in an undue burden on interstate commerce. H.R. REP. NO. 1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. CODE CONG. & AD. NEWS 4104, 4110–11. Thus, it is clear that Congress intended to establish uniform national rail safety standards.

Various courts which have considered the phrase in the entire context of section 434, read it to provide a narrow exception to a broad preemption of state regulation in rail safety matters. *National Ass'n of Regulatory Utilities Commissioners v. Coleman*, 542 F.2d 11, 13 (2d Cir.1976); *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108 (5th Cir.1973); *Consolidated Rail Corp. v. Pennsylvania Public Utility Comm'n*, 536 F.Supp. 653, 657 (E.D.Penn. 1982); *Atchison, Topeka & Santa Fe Railway Co. v. Illinois Commerce Commission*, 453 F.Supp. 920, 926 (N.D.Ill,1977). In short, the statute evinces a total preemptive intent in rail safety matters, with very limited exceptions. The Court must now determine whether the state regulations in issue fit within this narrow exception.

### 1) *Walkways, 16 T.A.C. § 5.619*

Section 5.619 requires the construction of walkways in areas on or immediately adjacent to the roadbed. Section 5.619 states:

(b) Where walkways shall be required. Walkways shall be located along tracks in yards, terminals, and at other points where switching, car spotting, or train or car inspections may reasonably be expected to be performed during the normal course of business.

*Id.* Walkway surface, slope and width specifications are established in subsections (c), (d) and (e). Subsections (f), (g), (h) and (i) detail specific locations where walkways are required, i.e., at switching, inspection and car spotting areas; at derails; and, at trackside warning devices. By definition, these walkways shall be constructed "alongside a railroad track or railroad switch...." 16 T.A.C. § 5.619(a).

■ The FRA has adopted comprehensive regulations that include specifications for the roadbed, track geometry and track structure. 49 C.F.R. part 213 (1985). Specifically, 49 C.F.R. part 213, subparts B, C and D set forth the requirements of roadbed structure, including drainage requirements, vegetation control, track gauge, alignment, curve, elevation and surface, ballast, cross ties, defective rails, rail-end mismatches, rail joints, tie plates, rail fastenings, turnouts and track crossings, switches, frogs, spring rail frogs, self-guarded frogs and frog guard rails, and guard faces. It is apparent that the roadbed area is extensively regulated by the federal government. While the term "roadbed" is not defined in the federal regulations or section 5.619, the evidence before the Court establishes that the term commonly refers to the area adjacent to and under the tracks. *See Velasquez v. Southern Pacific Transportation Co.*, 734 F.2d 216, 218 (5th Cir.1984). By definition, section 5.619 requires the construction of walkways alongside tracks or switches, i.e., on or in the roadbed. Moreover, the requirements of section 5.619 necessarily effect roadbed drainage capability and ballast requirements. Both matters are specifically covered by federal regulation, 49 C.F.R. 213, 103, .33. In short, 16 T.A.C. 5.619 attempts to regulate matters governed by existing federal regulation.[2]

Several courts have concluded that similar state walkway requirements are preempted, *Norfolk and Western Railway*

---

**2.** The affidavit testimony and other evidence before the Court support previous court and administrative rulings that walkways would have to be structurally integrated into the track roadbed. In this respect, the Court is of the opinion that Michael McGinley's expert testimony in this regard is credible. Mr. McGinley is a registered Texas professional engineer with twenty years of experience in railroad track engineering, design, construction and maintenance. The Court finds that Robert Farnsworth's affidavit testimony is insufficient to meet, rebut or even create a fact question as to the conclusions of Mr. McGinley.

Co. v. Burns, 587 F.Supp. 161, 170 (E.D. Mich.1984); Black v. Seaboard System Railroad, 487 N.E.2d 468 (Ind.Ct.App. 1986); Black v. Baltimore and Ohio Railroad Co., 398 N.E.2d 1361, 1363 (Ind.Ct. App.1980). Most significantly, the Fifth Circuit has recognized that walkways are so integrated into the roadbed and track structure that all but FRA regulation is precluded. Velasquez, 734 F.2d at 217–18. In Velasquez, the Circuit Court considered a trial court jury instruction that OSHA regulations applied to a plaintiff railroad worker's injuries suffered on a railroad bridge walkway beside a yard track. The Court noted that the FRA had issued a policy statement that displaced OSHA regulations. The Court held:

> The accident in the present case occurred on a walkway beside a track in a yard, and on a railroad bridge. The FRA policy statement provides that such area are not subject to OSHA regulations. It is not necessary that the FRA implement specific regulations for these area; an assertion of authority in a policy statement is sufficient to displace OSHA regulations.

Id. at 218.

The policy statement relied upon by the Velasquez Court states, in pertinent part:

> Third, the OSHA regulations would not apply to ladders, platforms, and other surfaces on signal masts, centenary systems, railroad bridges, turntables, and similar structures or to walkways beside the tracks in yards or along the right-of-way. These are areas which are so much a part of the operating environment that they must be regulated by the agency with primary responsibility for railroad safety. Therefore, FRA will determine the need for and feasibility of general standards to address individual hazards relating to such surfaces, keeping in mind the requirement of proper clearances and the familiarity of employees with existing industry designs.

43 Fed.Reg. at 10587 (1978). This FRA policy statement applies to the Railroad Commission regulation of walkways as well as to OSHA regulation of walkways. The Railroad Commission has no more authority to regulate walkways than does OSHA, and is likewise preempted from regulating walkways.

Moreover, the FRA considered and rejected more specific regulation of walkway conditions and construction when considering the regulations set forth at 49 C.F.R. part 213. The uncontroverted evidence before the Court establishes that among the original rules proposed by the FRA was a rule that specifically addressed the safety of employees who worked within ten feet of the centerline of the track. 36 Fed.Reg. 11976 (1971) (to be codified at 49 C.F.R. at 213) (proposed June 23, 1971). The Congress of Railway Unions, as well as the states of Tennessee, Montana and California filed comments concerning the proposed rule. In addition, the National Transportation Safety Board submitted a special study to the FRA that considered the proposed rule. Most, if not all of the comments called for more specific regulation of the walkway area. The FRA considered the comments, deleted the proposed rule and let stand the current regulations of the roadbed and areas immediately adjacent thereto.

When the FRA failed to exercise its full authority over walkways, after full consideration of the options, their inaction constituted an affirmative ruling that specific walkway regulation was inappropriate. Ray v. Atlantic Richfield Co., 435 U.S. 151, 178, 98 S.Ct. 988, 1004, 55 L.Ed.2d 179 (1978). In Ray the Court stated:

> The Court has previously recognized that 'where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute,' States are not permitted to use their police power to enact such a regulation.

Id. (citing Napier v. Atlantic Coast Line Railroad Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926).

■ Moreover, the State's argument that section 5.619 is not preempted because

its *objective* is different than that of the federal regulation, cannot survive. The objective of various state regulations is irrelevant in the determination of federal preemption. The proper inquiry "is whether both regulations can be enforced without impairing the federal superintendence of the field, *not* whether they are aimed at similar or different objectives." *Florida Lime and Avocado Growers v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). It is apparent that section 5.619 cannot coexist with current federal regulation without impairing federal superintendence of the field.

Consequently, section 5.619 is federally preempted by the Comprehensive Regulations Act set out in 49 C.F.R. part 213.

### 2) *Vegetation Control, 16 T.A.C. § 5.620(b)*

Section 5.620(b) provides:

(b) Each railroad corporation shall control vegetation on its right-of-way (except for the roadbed and area immediately adjacent thereto) for a distance of 500 feet each way from every public grade crossing so that it does not obscure the view of approaching trains to vehicular highway traffic.

*Id.* Federal vegetation control regulations are established at 49 C.F.R. 213.37 which states:

Vegetation on railroad property which is on or immediately adjacent to roadbed must be controlled so that it does not—

(a) Become a fire hazard to track-carrying structures;

(b) Obstruct visibility of railroad signs and signals;

(c) Interfere with railroad employees performing normal trackside duties;

(d) Prevent proper functioning of signal and communication lines; or

(e) prevent railroad employees from visually inspecting moving equipment from their normal duty stations.

*Id.*

 The federal regulation clearly and specifically addresses vegetation control

"on or immediately adjacent to roadbed." Section 5.620(b) attempts to avoid a conflict with the federal regulation in two ways: by regulating vegetation control on the railroad right-of-way "except for the roadbed and areas immediately adjacent thereto," and by stating its purpose to avoid obstruction of motorists' view of approaching trains. Neither distinction saves the regulation from preemption. First, the railroad right-of-way is an area immediately adjacent to the roadbed. No contrary definiton exists partially because any contrary definition would defy logic. In fact, the record reflects that the Defendants themselves cannot differentiate between the "right-of-way" and "property immediately adjacent to roadbed." Both areas are the same.

Further, the fact that the federal regulation addresses vegetation control with an objective different than that of the state is of no import. *See Paul*, 373 U.S. at 144–45, 83 S.Ct. 1218–19; *Napier*, 272 U.S. at 613, 47 S.Ct. at 210. Moreover, the FRA expressly addressed vegetation control on right-of-ways from the perspective of motorist visibility during the deliberation and public comment period that proceeded the adoption of the federal regulation. The Washington Utilities and Transportation Commission and the National Transportation Safety Board both recommended that vegetation be controlled to ensure railroad grade crossing visibility. The FRA considered both proposals and rejected both proposals. The FRA consideration and rejection of such rules acts as an affirmative ruling that such a rule is inappropriate. *Ray*, 435 U.S. 178, 98 S.Ct. at 1004. 16 T.A.C. § 5.620(b) is specifically preempted by federal regulation.

### 3) *Locomotive Equipment, 16 T.A.C. § 5.617*

 Section 5.617 states:

*Safety Equipment.* Each railroad corporation shall provide and maintain a first aid kit and an operable fire extinguisher in a plainly designated, accessi-

ble location on each of its cabooses and locomotives.

*Id.* The Locomotive Boiler Inspection Act, 45 U.S.C. § 23 (1986) wholly preempts the subject matter of locomotive equipment. *Napier,* 272 U.S. at 613, 47 S.Ct. at 210; *Consolidated Rail Corp. v. Pennsylvania Public Utility Comm'n,* 536 F.Supp. 653, 656–57 (E.D.Pa.1982), *aff'd mem.,* 696 F.2d 981 (3rd Cir.1982), *aff'd mem.,* 461 U.S. 912, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983).

> We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field. The broad scope of authority conferred upon the Commission leads to that conclusion. Because the standard set by the Commission must prevail, requirements by the states are precluded, however commendable or however different their purpose.

*Napier,* 272 U.S. at 613, 47 S.Ct. at 210. Further, the proscription against state regulation of locomotive equipment "extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." *Napier,* 272 U.S. at 611, 47 S.Ct. at 209. Whether or not the equipment prescribed by the state contributes to the operation of the locomotive is irrelevant; 16 T.A.C. § 5.617 is preempted by the Locomotive Boiler Inspection Act.

### 4) *Preemption by Failure to Address Local Hazard*

The Plaintiffs' second cause of action alleges that 16 T.A.C. 5.616–5.620 are preempted because they fail to address local safety hazards and are incompatible with existing federal law, rule, regulation, order or standard. States may regulate rail safety matters only when all three prongs of the preemption test established in 45 U.S.C. § 434 are satisfied. Thus, once the Secretary of Transportation adopts a rule, regulation, order or standard that does not wholly occupy the subject matter, the State may adopt laws, rules or regulations covering the same subject matter only: when necessary to eliminate or reduce an essentially local safety hazard;

when not incompatible with any federal law, rule, regulation, order or standard; and when not creating an undue burden or interstate commerce. *E.g., Donelon v. New Orleans Terminal Co.,* 474 F.2d 1108, 1112 (5th Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973). The language of the statute clearly demonstrates that all three prongs must be established or the state regulation will be preempted. 45 U.S.C. § 434; *see Donelon,* 474 F.2d at 1112.

Congressional intent regarding the first prong, local hazards, is clear from the House Reports on the 1970 Railroad Safety Act:

> The purpose of this latter provision is to enable the States to respond to local situations not capable of being adequately encompassed within uniform national standards. The States will retain authority to regulate individual local problems or reduce essentially local railroad safety hazards. Since these local hazards *would not be Statewide in character,* there is no intent to permit a State to establish Statewide standards superimposed on national standards covering the same subject matter.

H.R. REP. NO. 1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. and Ad. News 4104, 4117.

Courts that have addressed the issue have consistently held that the first prong of the test does not authorize imposition of statewide standards. *E.g., Coleman,* 542 F.2d at 14–15 (state accident reporting requirements, largely duplicative of similar federal requirements, preempted due to statewide impact); *Consolidated Rail Corp.,* 536 F.Supp. at 658 (regulation that required speed recorders preempted because it had statewide impact); *Atchison, Topeka & Santa Fe,* 453 F.Supp. at 926 (state commodities regulations preempted due to statewide impact).

The Defendants do not contest that 16 T.A.C. § 5.616–5.620 have statewide impact. The Defendants admit that the subject matter of those regulations has been addressed by federal law, rule, regulation,

order or standard. Moreover, "the Commission does not attempt to assert that the rules meet the three elements of the second test in 45 U.S.C. § 434."

■ The Court has already determined that 16 T.A.C. §§ 5.617, 5.619 and 5.620(b) are wholly preempted. In addition, it is readily apparent that these regulations necessarily have statewide impact and therefore do not meet the first prong of the test. 16 T.A.C. § 5.616 and 5.618 impose state filing requirements for various reports, codes, and a wayside detector map. The record reflects that specific Federal regulations already specify which documents railroads must file with regulatory agencies. Consequently, 16 T.A.C. §§ 5.616–5.620 are preempted because they fail to address local safety hazards and are incompatible with existing federal law, rule, regulation, order or standard.

The Court has already determined that 16 T.A.C. §§ 5.616–5.620 are preempted for the reasons stated above. Therefore, the Court need not address the Plaintiffs' remaining arguments on the their motion for partial summary judgment. The Court would note, however, that this case represents the fourth time in as many years that courts have been forced to address federal preemption of rules or regulations promulgated by various Texas agencies including the Texas Railroad Commission; rules and regulations that are *clearly* preempted. *State of Texas v. United States*, 730 F.2d 409 (5th Cir.), *modified, State of Texas v. United States*, 749 F.2d 1144 (5th Cir.) *cert. denied*, 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1984); *Missouri Pacific R.R. Co. v. Railroad Comm'n*, 653 F.Supp. 617 (W.D.Tex.1986); *Burlington Northern R.R. Co. v. Public Utility Comm'n*, 637 F.Supp. 584 (W.D.Tex.1986) (consolidated).

Why the Railroad Commission continues to expend its resources in such idle undertakings remains a mystery to this Court. When one considers the existing fiscal problems facing the State of Texas, it would appear that the resources of the Commission and the Attorney General's Office would best be spent in more meaningful and positive pursuits.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Defendants' Motion to Dismiss and Motion for Summary Judgment are not meritorious and are hereby DENIED;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs' Motion for Partial Summary Judgment is hereby GRANTED IN PART. Specifically, the Court finds that the United States of America acting through the Federal Railroad Administration and by the Federal Railroad Safety Act, 45 U.S.C. §§ 421–441 (1972 and Supp.1986), and by the Locomotive Boiler Inspection Act, 45 U.S.C. § 22 *et seq.* (1972) has totally preempted and wholly occupied the subject matter of locomotive equipment, track and roadbed structure and vegetation control. Accordingly, any state action in those areas is preempted, and specifically 16 T.A.C. §§ 5.617, 5.619 and 5.620(b) are preempted. Further, the Court finds that none of the 16 T.A.C. §§ 5.616–5.620 address an essentially local safety hazard, but rather all are statewide in application and incompatible with federal regulation. Accordingly, 16 T.A.C. §§ 5.616–5.620 are entirely preempted by 45 U.S.C. § 434.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that 16 T.A.C. §§ 5.617, 5.619 and 5.620(b) are void as specifically preempted by federal regulatory occupation of their subject matter.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that 16 T.A.C. §§ 5.616–5.620 are void as federally preempted for failure to address local safety hazards.